[No. 81030-3. En Banc.]
Argued February 14, 2008. Decided October 9, 2008.

THE STATE OF WASHINGTON, *Respondent*, v. HERBERT JOHN KIER, *Appellant*.

---

*Eric Broman* and *David B. Koch* (of *Nielsen, Broman & Koch, PLLC*), and *Harlan R. Dorfman*, for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Dennis J. McCurdy, Deputy*, for respondent.

¶1 STEPHENS, J. — In *State v. Freeman*, 153 Wn.2d 765, 108 P.3d 753 (2005), we recognized that when an assault

elevates a robbery to first degree, generally the two offenses are the same for double jeopardy purposes. We refused to adopt a per se rule, however, underscoring the need to take a "hard look at each case." *Id.* at 774. In this case, Herbert John Kier was convicted of first degree robbery and second degree assault, arising out of a carjacking incident. While he maintains that the assault conviction merges with the robbery conviction under our holding in *Freeman*, the State urges us to reconsider our *Freeman* analysis. Alternatively, the State argues that Kier's robbery and assault constituted separately punishable crimes against separate victims. Adhering to our precedent, and based on the charges, evidence, and instructions given to the jury in this case, we conclude that Kier's assault conviction merges into his robbery conviction. Accordingly, we reverse the conviction for second degree assault and remand to the trial court for resentencing.

## FACTS

¶2 On April 27, 1999, 20-year-old Qualagine Hudson was driving his Cadillac home from a car shop in south Seattle. Hudson's 16-year-old cousin, Carlos Ellison, was seated in the passenger seat. Ellison lived with Hudson at the time and did not yet have his driver's license. Hudson had been trying to sell his Cadillac and had a "For Sale" sign posted in the car window. Report of Proceedings (RP) (July 14, 1999) at 46.

¶3 As Hudson drove down the street, three men in another car honked their horn at him. Thinking the men were interested in buying his car, Hudson pulled over, got out of the car, and started talking to the driver of the other car, Cedric Alderman. Ellison remained seated inside the Cadillac. During this conversation, Kier got out of the other car and pointed a gun at Hudson. Alderman then grabbed Hudson, but Hudson was able to break free and run away to call the police. Kier then approached the Cadillac and pointed the gun at Ellison, who was still seated in the passenger seat. Kier told Ellison to "Get the f___ out of the car." *Id.* at 51. Ellison got out of the car. Kier then came

around and asked if Ellison had any money on his side of the car. Ellison answered that he did not. Kier, Alderman, and the third accomplice then drove away with both cars.

¶4 Kier was initially charged with first degree robbery. The information identified Hudson and Ellison as victims of the carjacking. By amended information, the State added a count of second degree assault, specifying Ellison as the victim. A jury found Kier guilty as charged.

¶5 This appeal follows two prior appeals and a personal restraint petition involving other issues affecting Kier's sentence. *State v. Kier*, noted at 109 Wn. App. 1020 (2001); *State v. Kier*, noted at 119 Wn. App. 1028 (2003).

¶6 Following our decision in *Freeman*, Kier filed a motion to vacate his second degree assault conviction as a violation of his right against double jeopardy. The trial court denied the motion. Kier appealed to Division One of the Court of Appeals, which transferred the matter to this court under RAP 4.4 to promote the orderly administration of justice.

## ANALYSIS

### *Merger: Double Jeopardy*

¶7 The State may bring multiple charges arising from the same criminal conduct in a single proceeding. *State v. Michielli*, 132 Wn.2d 229, 238-39, 937 P.2d 587 (1997). However, state and federal constitutional protections against double jeopardy prohibit multiple punishments for the same offense. *State v. Vladovic*, 99 Wn.2d 413, 422, 662 P.2d 853 (1983); *Albernaz v. United States*, 450 U.S. 333, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981); *see* CONST. art. I, § 9 ("No person shall be . . . twice put in jeopardy for the same offense."); U.S. CONST. amend. V (same). Within constitutional constraints, the legislature has the power to define criminal conduct and assign punishment to it. *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995) (recognizing rape and incest as separate offenses). " 'Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must

determine whether, in light of legislative intent, the charged crimes constitute the same offense.'" *Freeman*, 153 Wn.2d at 771 (quoting *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004)). Our review is de novo, and legislative intent is the touchstone. *Id.*

¶8 In *Calle* we set forth a three-part test for determining whether the legislature intended multiple punishments in a particular situation. 125 Wn.2d at 776. We first consider express or implicit legislative intent based on the criminal statutes involved. *Id.* If the legislative intent is unclear, we may then turn to the "same evidence" *Blockburger* test, which asks if the crimes are the same in law and in fact. *Calle*, 125 Wn.2d at 777-78; *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932). Third, if applicable, the merger doctrine may help determine legislative intent, where the degree of one offense is elevated by conduct constituting a separate offense. *Vladovic*, 99 Wn.2d at 419. We have also recognized that, even if two convictions would appear to merge on an abstract level under this analysis, they may be punished separately if the defendant's particular conduct demonstrates an independent purpose or effect of each. *Freeman*, 153 Wn.2d at 773; *State v. Johnson*, 92 Wn.2d 671, 680, 600 P.2d 1249 (1979).

¶9 Relying on our analysis in *State v. Zumwalt*, the consolidated case decided under *Freeman*, Kier argues that the legislature did not intend separate punishments for his first degree robbery and second degree assault convictions because the threat to use force necessary to the assault elevated the robbery to first degree. Br. of Appellant at 10-13. The State responds that our *Freeman* analysis was wrong. Br. of Resp't at 5, 13-17.

■ ¶10 Preliminarily, the State's suggestion that courts should not follow *Freeman* because it was "decided incorrectly," Br. of Resp't at 5, fails to appreciate the doctrine of stare decisis. We do not lightly set aside precedent, and the burden is on the party seeking to overrule a decision to show that it is both incorrect and harmful. *See State v. Devin*, 158 Wn.2d 157, 168, 142 P.3d 599 (2006) (citing *In re Rights to Waters of Stranger Creek*, 77 Wn.2d

649, 653, 466 P.2d 508 (1970)). The State makes no attempt to meet this burden.

▮▮ ¶11 Moreover, we are persuaded that *Freeman* correctly analyzed the robbery and assault statutes at issue to conclude that second degree assault merges into first degree robbery, while first degree assault, which carries a much larger penalty, does not. *Freeman*, 153 Wn.2d at 773-78. Notably, the legislature has amended the second degree assault statute since *Freeman* without taking any action in response to our decision. *See* LAWS OF 2007, ch. 79, § 2; *see also Buchanan v. Int'l Bhd. of Teamsters*, 94 Wn.2d 508, 511, 617 P.2d 1004 (1980) (noting presumption of legislative acquiescence in judicial interpretation where statute is amended following court decision without change to relevant portions). We are confident that our analysis in *Freeman* accurately reflects the legislature's intent.

¶12 The central question, then, is whether this case is like the *Zumwalt* case in *Freeman*, specifically whether Kier's second degree assault conviction merges into his first degree robbery conviction, where the carjacking incident giving rise to both charges involved two victims, and where the prosecutor in closing argument identified the driver as the victim of the robbery and the passenger as the victim of the assault.[1]

¶13 While the situation here is not identical to *Zumwalt*, in light of the way this case was charged and presented to the jury, we conclude that Kier's assault conviction merges into his robbery conviction.

▮▮ ¶14 The jury convicted Kier under RCW 9A.56-.200(1)(a)(i)-(ii), formerly RCW 9A.56.200(1)(b) (1975), which provides that a person is guilty of first degree robbery if he is armed with a deadly weapon or displays what appears to be a firearm or deadly weapon, during the commission of a robbery. Clerk's Papers (CP) at 5. The general definition of

---

[1] This question focuses on the third part of the *Calle* test and the merger doctrine. Neither party suggests that the analysis under the first two parts of the test would yield any different result here than in *Freeman*. Br. of Resp't at 5; Br. of Appellant at 9-10.

robbery requires the taking of property by the use or threatened use of immediate force, violence, or fear of injury to a person or his property, or the person or property of anyone. RCW 9A.56.190. Kier was also convicted of second degree assault under RCW 9A.36.021(1)(c), which finds a person guilty if he, inter alia, assaults another with a deadly weapon. CP at 6. There is no definition of assault in the criminal code, and Washington courts apply the common law definitions of assault. *State v. Walden*, 67 Wn. App. 891, 893, 841 P.2d 81 (1992). One common law form of assault involves putting another in apprehension or fear of harm, regardless of whether the actor intends to inflict or is incapable of inflicting such harm. *Id.* at 893-94; *State v. Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320 (1994). At Kier's trial, the jury was instructed on this common law definition of assault. CP at 112.

¶15  When the definitions of first degree robbery and second degree assault are set side by side, it is clear that both charges required the State to prove that Kier's conduct created a reasonable apprehension or fear of harm. Because Kier was also charged with being armed with or displaying a deadly weapon, this was the means of creating that apprehension or fear. CP at 6. The merger doctrine is triggered when second degree assault with a deadly weapon elevates robbery to the first degree because being armed with or displaying a firearm or deadly weapon to take property through force or fear is essential to the elevation. RCW 9A.56.200(1)(a)(i)-(ii), .190; RCW 9A.36.021(1)(c); *see Wilson*, 125 Wn.2d at 218; *Freeman*, 153 Wn.2d at 780.

¶16 The State seeks to distinguish this case from *Zumwalt* based on the elevating factor here being the deadly weapon rather than the "causes substantial bodily harm" prong of the assault statute. RCW 9A.36.021(1)(b); *Freeman*, 153 Wn.2d at 770. It relies upon *State v. Esparza*, 135 Wn. App. 54, 64-66, 143 P.3d 612 (2006), *review denied*, 161 Wn.2d 1004 (2007). There, Division One of the Court of Appeals held that a person convicted of attempted first degree robbery under the "[d]isplays what appears to be a

firearm or other deadly weapon" prong of the robbery statute and second degree assault under the "[a]ssaults another with a deadly weapon" prong of the assault statute arising out of the same incident can permissibly be punished for having committed both offenses, thus distinguishing *Zumwalt*. RCW 9A.56.200(1)(a)(ii); RCW 9A.36.021(1)(c).

¶17 Importantly, the elevated charge at issue in *Esparza* was *attempted* first degree robbery. Proof of an attempted robbery requires only proof of intent to commit robbery and a substantial step toward carrying out that intent. RCW 9A.28.020(1). The Court of Appeals recognized that any number of actions proved at Esparza's trial constituted a substantial step toward the attempted robbery and, thus, the assault was not necessary to elevate the charge to first degree. *Esparza*, 135 Wn. App. at 63-64. This followed the reasoning of *State v. Beals*, 100 Wn. App. 189, 997 P.2d 941, *review denied*, 141 Wn.2d 1006 (2000), where the court rejected defendant Beals' merger argument and observed:

> A completed second degree assault is not necessary to prove *attempt* to commit first degree robbery, and it is unlikely the legislature intended . . . the merger doctrine to so apply here. The attempted robbery was complete as soon as Beals formed the requisite intent and took the hammer in hand, and is distinguishable from Beals' act of hitting Perry on the head to complete the assault. . . .
>
> . . . Similarly here, all that was required to satisfy the elements of attempted first degree robbery was a substantial step, which may or may not have included actual injury to the victim. The merger doctrine is thus inapplicable.

*Id.* at 193-95 (citations omitted). Kier was convicted of completed first degree robbery, which required more than a substantial step. That the assault here involved assault with a deadly weapon, rather than by the infliction of substantial bodily harm, does not defeat application of the merger doctrine. The fact remains that the completed assault was necessary to elevate the completed robbery to first degree. *See Freeman*, 153 Wn.2d at 778.

*Merger: Rule of Lenity*

¶18 The State next argues that the assault and robbery convictions do not merge because these crimes were committed against separate victims, specifically that Qualagine Hudson was the victim of the robbery while Carlos Ellison was the victim of the assault. Br. of Resp't at 22-27. Central to this argument is the State's premise that the jury could not have found Ellison to be a victim of the robbery. *Id.* at 26-27. This argument requires us to take a "hard look," *Freeman*, 153 Wn.2d at 774, at how this case was presented to the jury.

¶19 The amended information charging Kier identified both Hudson and Ellison as victims of the first degree robbery, and Ellison as the victim of the second degree assault. CP at 5-7. The information is not evidence, of course; unless included in the jury instructions, the State is not required to prove nonessential facts in an information. *State v. Tvedt*, 153 Wn.2d 705, 719, 107 P.3d 728 (2005); *see also* RP (July 15, 1999) at 55 (instructing jury that contents of information is not proof of charges). The jury at Kier's trial was never read the factual portion of the amended information listing Hudson and Ellison as victims. RP (July 13, 1999) at 60. With regard to the robbery charge, the jury was given the following "to convict" instruction:

> To convict the defendant of the crime of Robbery in the First Degree, as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> 1. That on or about [the] 27th day of April, 1999 the defendant unlawfully took personal property from the person or in the presence of another;
> 2. That the defendant intended to commit theft of the property;
> 3. That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person or to that person's property or the property of another;

4. That force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking;

5. That in the commission of these acts or in immediate flight therefrom the defendant was armed with a deadly weapon or displayed what appeared to be a deadly weapon or inflicted bodily injury; and

6. That the acts occurred in the State of Washington.

CP at 111. The second degree assault "to convict" instruction stated:

To convict the defendant of the crime of Assault in the Second Degree, as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

1. That on or about [the] 27th day of April, 1999 the defendant assaulted Carlos Ellison with a deadly weapon; and

2. That the acts occurred in the State of Washington.

CP at 113.

¶20 At trial, the jury heard testimony from several witnesses describing the carjacking incident. Seattle Police Officer Charlie Villagracia testified that he responded to a "carjacking" and that the "robbery" occurred in his sector. RP (July 14, 1999) at 15-16. Inquiring about a statement that Ellison made to the police subsequent to the incident, the prosecutor asked Villagracia, "Did he give you a description of the car that—his car that had been taken?" and Villagracia answered, "Yes." *Id.* at 18.

¶21 In the testimony of Villagracia's partner, Seattle Police Officer Ronald Mazziotti, the prosecutor established that the officers had responded to a 911 call regarding an alleged "carjacking." *Id.* at 34. The prosecutor then asked Mazziotti about whether they were able to get a statement from the victims:

Q. Did you get from either or both of the victims a general description of what had taken place?

A. Yes, we did.

Q. What was that?

A. The basic description, the incident was that the victims were in their vehicle. I believe they were honked at by the suspect vehicle. They pulled over. At that time they believed the suspects were interested in purchasing their car, and eventually, after some short conversation, one of the suspects pulled a gun on the victims and ended up taking the victims' vehicle.

*Id.* at 37-38. When the prosecutor asked Ellison what happened during the incident, Ellison answered, "We got carjacked." *Id.* at 45. The prosecutor subsequently asked, "When is the first time you noticed the people who ended up carjacking you?" *Id.* In addition, the first voice on the 911 tape, which was played for the jury, stated, "I have two boys here that told me they've just been carjacked." *Id.* at 55.

¶22 Ellison also testified about having the gun pointed at him:

Q. All right. What did Suspect No. 1 [Kier] do?

A. He pointed the gun at me and told me to get out of the car.

Q. Okay. What did he say exactly?

A. Like: Get the f___ out of the car.

Q. And where were you when he pointed the gun at you?

A. In the passenger's seat.

Q. Where was he when he pointed it at you?

A. He was like halfway out of the driver's side of the car, halfway in and halfway out.

Q. Was he in the process of getting into the car?

A. No, he was like trying to get me out.

Q. Okay. And how far away did he hold the gun to you when he pointed it at you?

A. Probably like ten feet.

Q. What part of you did he point it at?

A. I don't know. It was like I was sitting here and I looked over and he was [sic] just pointed it at me.

Q. What did you do after he pointed the gun at you and said: Get the f___ out of the car?

A. I said all right, and I got out.

Q. What happened after that?

A. Then he ran around the car and asked me if I had any cash to my side, where I was a passenger, and I said no. Then I guess the short one hopped in the car and drove away. He jumped in the other car and drove away.

*Id.* at 51-52.

¶23 In closing argument the prosecutor stated:

We know that Herbert Kier committed robbery in the first degree when he put that handgun into the chest of Qualagine and stole his 1990 Cadillac. We know that in committing that robbery he was armed with a deadly weapon, recovered or not. . . . We also know that he committed an assault in the second degree when he pointed that pistol at Carlos Ellison and told him to get out of the car. And we know that when he committed that assault in the second degree, he was armed with a deadly weapon.

RP (July 15, 1999) at 74-75.

¶24 Kier argues that, given the evidence and instructions in this case, it is unclear whether the jury found that Ellison was a victim of the robbery as well as the assault. Br. of Appellant at 13-21. This creates an ambiguity in the jury's verdict, which, under the rule of lenity, must be resolved in the defendant's favor. *Id.* at 13-14 (citing *State v. DeRyke*, 110 Wn. App. 815, 824, 41 P.3d 1225 (2002), *aff'd on other grounds*, 149 Wn.2d 906, 73 P.3d 1000 (2003)). The State counters that the rule of lenity is inapplicable because the prosecutor's closing argument clearly identified Hudson as the robbery victim and Ellison as the assault victim. Br. of Resp't at 25-27.

¶25 The situation here is somewhat analogous to a multiple acts case in which the State must make a clear election of the conduct forming the basis of each charge or the court must instruct the jury to agree on a specific criminal act. *See State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988); *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984); *State v. Bland*, 71 Wn. App. 345, 351, 860

P.2d 1046 (1993). It is also analogous to *DeRyke*, in which Division One of the Court of Appeals found that the trial court's "to convict" instruction on attempted first degree rape permitted the jury to find that kidnapping the victim elevated the attempted rape to the first degree. *DeRyke*, 110 Wn. App. at 823-24. Because there was no way to determine in fact that the jury had not considered the kidnapping as the elevating element, the rule of lenity applied to merge the kidnapping conviction into the attempted first degree rape. *Id.* at 824. The court in *DeRyke* noted that this ambiguity could have been eliminated had the State proposed an instruction that precluded the jury from considering the kidnapping as an elevating element for attempted first degree rape. *Id.*

¶26 As in *DeRyke*, the verdict here is ambiguous. While the "to convict" instruction on the first degree robbery count was stated in terms of a single victim, nothing in the instructions identified Hudson as the sole victim of the robbery. In contrast, the second degree assault "to convict" instruction specified Ellison as the victim, leaving a reasonable jury to conclude that the robbery instruction applied equally to Hudson or Ellison, or both.

¶27 Proof of robbery does not require the specific identity of the victim or victims. *State v. Levy*, 156 Wn.2d 709, 722, 132 P.3d 1076 (2006). Given that the unit of prosecution allows only one count of robbery where a single taking of property places multiple victims in fear of harm, whether the robbery victim was Hudson or Ellison, or both, was not essential to Kier's conviction. *See Tvedt*, 153 Wn.2d at 719. Nonetheless, where the jury heard evidence describing both Hudson and Ellison as victims of the robbery and the instruction did not specify a victim, the basis for Kier's conviction is ambiguous. This is in contrast to the situation in *Tvedt*, where the defendant was tried on stipulated facts, including that he took separate property from specific victims. *Id.* Here, given the possibility that the jury could have found Ellison a victim of the robbery and the certainty based on the instructions that it found him the victim of the

assault, it is unclear from the jury's verdict whether the assault was used to elevate the robbery to first degree.

¶28 The State argues that the possibility that the jury could have considered Ellison a victim of the robbery was eliminated because the prosecutor made a "clear election" of which act supported each charge, as is allowed in a multiple acts case. Br. of Resp't at 25-27. Specifically, the prosecutor in closing argument identified Hudson as the victim of the robbery and Ellison as the victim of the assault. RP (July 15, 1999) at 74-75. The problem with this argument is that we cannot consider the closing statement in isolation. The evidence presented to the jury identified both Hudson and Ellison as victims of the robbery, including Ellison's own testimony that Kier pointed the gun at him in the course of stealing the car. Furthermore, the jury instructions did not specify that Hudson alone was to be considered a victim of the robbery. While the prosecutor at the close of the trial attempted to require this finding, the jury was properly instructed to base its verdict on the evidence and instructions and not on the arguments of counsel. *Id.* at 56. Accordingly, this is not a situation in which a clear election was made.

¶29 The State relies on the Court of Appeals decision in *Bland* to argue that a clear election can be based on the prosecutor's closing argument. Br. of Resp't at 26; *see Bland*, 71 Wn. App. at 351-52. Contrary to the State's assertion, however, the court in *Bland* did not rely on the closing argument alone. *Bland*, 71 Wn. App. at 352 (stating, "In addition, during closing argument the State made it clear, once more, that Bland's threatening of Jefferson with the gun was the act the State was relying on for count 1 and Bland's near shooting of Carrington with the gun was the act relied upon for count 2."). Rather, the evidence, jury instructions, and closing argument all supported the election of a specific criminal act. *Id.* (holding, "[F]rom the record in this case, the charging document, and the special verdict form, it is clear that the State elected Bland's actions with the gun.").

¶30 Here in contrast, the evidence and instructions allowed the jury to consider Ellison a victim of the robbery as well as the assault, notwithstanding the State's closing argument. As a result, the verdict here is ambiguous. *Cf. DeRyke*, 110 Wn. App. at 823-24. The rule of lenity therefore requires the merger of Kier's second degree assault conviction into his first degree robbery conviction.

¶31 Finally, the State argues that even if merger otherwise applies, we should find that the assault on Ellison had a separate and distinct purpose from the robbery, invoking the exception under *Johnson*. Br. of Resp't at 27-28; *see Johnson*, 92 Wn.2d at 680. This argument is unavailing because the State offers no facts to support it. We do not rule out the possibility that, in the course of a robbery, a separate assault on a victim may occur; we recognized as much in *Tvedt*. *Tvedt*, 153 Wn.2d at 716 n.4. Here, however, the evidence at trial did not identify any purpose or effect of the assault on Ellison other than to effectuate the carjacking.

## CONCLUSION

¶32 Adhering to our analysis of the merger doctrine in *Freeman*, we hold that Kier's second degree assault conviction merges into his conviction for first degree robbery. Accordingly, we reverse the second degree assault conviction and remand to the trial court for resentencing.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, and FAIRHURST, JJ., concur.

¶33 J.M. JOHNSON, J. (dissenting) — Herbert John Kier and two friends pulled over Qualagine Hudson while Hudson was driving his car. Kier and his friends approached and brandished guns in order to steal Hudson's car. Once the car was parked and Hudson had exited, Kier turned his weapon on Carlos Ellison, who was in the passenger seat. Kier loudly ordered Ellison to get out and

asked if he had any money. The issue here is what crimes were committed.

¶34 When Kier displayed a gun to rob Hudson of his car, Kier committed first degree robbery. RCW 9A.56.200(1)(a)(i)-(ii), formerly RCW 9A.56.200(1)(b) (1975). When Kier turned the gun on Ellison, he committed second degree assault. RCW 9A.36.021(1). I cannot agree with the majority that the jury somehow mistakenly found Ellison, riding in the passenger seat, was the (car) robbery victim, which would merge the two crimes and prevent Kier from two convictions. True, the jury instruction did not specifically tell the jury that Hudson was the one robbed of his car. Nevertheless, we defer to jury findings, and common sense dictates that when a car is stopped and stolen it is the driver (here owner), not the passenger, who is robbed. The passenger was later assaulted (albeit with the same weapon). Kier committed both crimes, and the jury found both.

¶35 Based on the jury instructions, the evidence the jury saw, the prosecutor's arguments, the information, and common sense, I would hold that the prosecutor clearly elected, and the jury clearly found, two separate crimes. I respectfully dissent.

¶36 Starting with the jury instructions, the assault instruction specifically told the jury that Ellison was the assault victim. It did not name Hudson as the robbery victim, but did make clear that only one person was robbed. The instruction told the jury that, to convict, it would have to find that "the defendant unlawfully took personal property from the person or in the presence of another" and that "the taking was against *the* person's will . . . ." Clerk's Papers at 111 (emphasis added). According to the instructions then, only one of the two victims was robbed. I cannot agree with the majority that the instruction left "a reasonable jury to conclude that the robbery instruction applied equally to Hudson or Ellison, or both." Majority at 812. The instruction allowed the jury to convict for one victim. That

victim of robbery was the owner/driver (who had a prominent sign in the car window offering its sale).

¶37 The prosecutor also had made the choice clear. He said, in closing, that "Herbert Kier committed robbery in the first degree when he put that handgun into the chest of [Hudson] and stole his 1990 Cadillac." Report of Proceedings (RP) (July 15, 1999) at 74-75. I agree with the majority that we cannot consider this statement in isolation, but neither may we blithely disregard it. The argument emphasized to the jury what had been obvious from the evidence: one person was robbed of his car, and it was the person who was driving the car.

¶38 The evidence on which the majority relies does not dispel this. The jury heard from two police officers who testified that, immediately after the robbery, Ellison said he was carjacked. Indeed, Ellison himself testified that "we got carjacked." RP (July 14, 1999) at 45. This is not proof that the jury found Ellison to be the (car) robbery victim. After all, Ellison was 16 years old, and he was not driving. It is not likely the jury took his statement as evidence that Ellison, and not Hudson, was the one robbed. Both victims told the jury that Hudson owned and was driving the car. *Id.* at 47, 52, 65.

¶39 The filed criminal information also made the prosecutor's election clear. The majority disregards that information, but a court cannot disregard this formal filing. " 'If by reference to the record, *particularly the information*, the verdict can be explained or the absent detail can be shown, it is sufficient to sustain the judgment.' " *State v. Tugas*, 37 Wn.2d 236, 248, 222 P.2d 817 (1950) (emphasis added) (quoting *State v. Domanski*, 9 Wn.2d 519, 523, 115 P.2d 729 (1941) (citing 23 C.J.S. § 1398, at 1077-78)). The information provides further proof that the State made a clear election to allege Hudson as the robbery victim and Ellison as the assault victim.

¶40 The jury instructions, the arguments of the prosecutor, the evidence, and the information all support the jury's finding that Hudson, not Ellison, was the robbery victim.

And so does common sense. The instructions told the jury that Kier was charged with robbery and assault and that Ellison was the assault victim. It stands to reason that Hudson was the robbery victim—he owned the car that was robbed, he was driving, and Kier first approached and pointed a gun at his chest in his attempt to take the car. The instructions may leave a logical possibility that Ellison was the victim of both crimes (with the attendant logical result that Hudson was no victim at all), but logical possibility is not sufficient to trigger application of the rule of lenity. The possibility must also be realistic.

¶41 *State v. Lane*, 37 Wn.2d 145, 152, 222 P.2d 394 (1950) adopted this approach. " 'The jury's intent is to be arrived at by regarding the verdict liberally, with all reasonable intendments in its support and with the sole view of ascertaining the meaning of the jury, and not under the technical rules of construction which are applicable to pleadings.' " *Id.* (quoting 53 AM. JUR. *Trial* § 1036, at 716 (1945)). Reasonable intendments dictate that the jury's verdict was clear.

¶42 The jury instructions, the evidence, the information, and the prosecutor's arguments point to what common sense confirms: when a car is stolen, it is the driver and owner, not the passenger, who is robbed. Pointing a gun and ordering a passenger out is a separate crime. Herbert John Kier committed two distinct crimes against two victims. He was charged with two distinct crimes, and the jury convicted. I would affirm the jury verdicts and these two convictions. I respectfully dissent.

OWENS, J., concurs with J.M. JOHNSON, J.