# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
             )   No. 69851-6-I
       Respondent, )
             )   DIVISION ONE
       and )
             )   UNPUBLISHED OPINION
JEFFREY LAFATE BRINKLEY, )
             )
       Appellant. )   FILED: March 10, 2014
_____ )

APPELWICK, J. — Based on evidence that Brinkley participated in the robbery, kidnapping, and assault of a fellow drug dealer, a jury convicted him of first degree robbery, second degree assault, and second degree kidnapping. Brinkley argues that the trial court committed reversible error by instructing the jury on an alternative means for committing first degree robbery that was not charged in the information. Alternatively, Brinkley contends that his conviction for assault must be vacated because it merges with the robbery. While we agree that the jury was incorrectly instructed as to the robbery, we conclude the instructional error was harmless beyond a reasonable doubt. However, based on the way the crimes were charged and proved, we conclude that Brinkley's assault conviction merges into his robbery conviction. Accordingly, Brinkley's assault conviction must be vacated.

## FACTS

On December 1, 2011, Kenny Easley arrived unannounced at the home of Louis and Susan Munson. Easley's purpose was to collect a debt for drugs previously fronted to Jeff Brinkley and Ethan Mattox, both of whom were staying at the Munsons' property. Brinkley and Mattox had discussed the possibility of robbing Easley.

Chuck Munson had instructed Easley never to come to the house without calling first. However, after unsuccessfully trying to reach Brinkley, Mattox, and Munson by telephone, Easley went to the Munsons' house.

Munson, Brinkley, and Mattox were in the basement going through some tools when Easley arrived. Munson was angry upon hearing that Easley was there and went up the basement stairs to confront him. Munson and Easley had a heated exchange in front of the house. Mattox and Brinkley then grabbed Easley and forcibly dragged him down to the basement.

Once in the basement, Brinkley hit Easley. Then, while Mattox was pointing a revolver at Easley, they made him strip down to his boxers. Easley said they did this because "[t]hey wanted [his] jewelry" and because they wanted to find out if he was wearing a wire. They took Easley's necklace, watch, leather jacket, and wallet. At one point, Brinkley told Easley he was being "south-sided," or in other words, "disciplined."

After about 20 minutes, Munson came down and told them to stop. When Munson came downstairs, Brinkley and Mattox made Easley move to a different part of the basement. Awhile later, as his wife became increasingly unhappy about what was taking place, Munson pounded on the floor with a broom handle.

Mattox retrieved and opened a safe from Easley's car containing drugs, cash, and a 9 millimeter handgun. Brinkley took the gun and the two split the other contents of the safe. They threatened to shoot Easley unless he smoked methamphetamine to further prove he was not working for law enforcement. At some point, Brinkley answered Easley's telephone and talked to Neptina Dick, who was waiting for Easley to deliver cold medicine to her.

2

After approximately an hour in the basement, Brinkley, Mattox, and Easley left in Easley's car. Brinkley drove and Mattox had a gun in his lap. They drove out to the woods, then decided to get cold medicine and take Easley to Dick's house. Brinkley and Mattox left Easley there. They gave Easley his cell phone and a small portion of the drugs they had taken, but retained his money, car, firearm, jewelry, and most of the drugs. They told Easley they would return his car if he stayed at Dick's house and did not call his supplier. But, after they left, Easley immediately called his wife to come and get him. He also called his supplier and his "people."

Later that evening, Easley, his supplier, and several others returned to the Munsons' residence. Several in the group were armed and wearing bulletproof vests. The group held the Munsons hostage for several hours while they tried to negotiate with Brinkley and Mattox to return to the house. Eventually, one member of the armed group accidentally shot and killed another member of the group and everyone except the Munsons fled.

When he was detained by police several weeks later, Brinkley volunteered that he had some information about a homicide on the Tulalip reservation. He eventually discussed his "hypothetical" involvement in assaulting Easley and robbing him of drugs and money.

The State charged Brinkley with robbery in the first degree, assault in the second degree, and kidnapping in the second degree. After a trial, a jury convicted him as charged.

## DISCUSSION

### I.  Uncharged Alternative Means

Brinkley claims that his robbery conviction must be reversed, because the jury was instructed on an uncharged statutory alternative means of committing the crime.

The State responds that Brinkley is barred from raising this argument on appeal under the doctrine of invited error.  The State claims that invited error applies, because the defense adopted the error when it objected to the "to convict" instruction on a different basis and failed to take exception to the uncharged alternative means of being armed with a deadly weapon.  However, invited error occurs when the defense proposes the allegedly erroneous instruction.  See, e.g., State v. Boyer, 91 Wn.2d 342, 345, 588 P.2d 1151 (1979); State v. Studd, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999); State v. Henderson, 114 Wn.2d 867, 870, 792 P.2d 514 (1990).  In this case, Brinkley did not propose the improper instruction, he merely failed to object to the erroneous aspect.  "[F]ailing to except to an instruction does not constitute invited error." State v. Corn, 95 Wn. App. 41, 56, 975 P.2d 520 (1999).  Brinkley did not invite the alleged instructional error.

Defendants must be informed of the charges against them, including the manner of committing the crime.  State v. Bray, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988).  When an offense may be committed by alternative means, it is error to instruct the jury on a means that was not alleged in the information, regardless of the range of evidence admitted at trial.  State v. Laramie, 141 Wn. App. 332, 342, 169 P.3d 859 (2007); State v. Chino, 117 Wn. App. 531, 540, 72 P.3d 256 (2003); Bray, 52 Wn. App. at 34.  Such

an erroneous instruction is presumed prejudicial unless it affirmatively appears that the error was harmless. Bray, 52 Wn. App. at 34-35.

Here, it was error to instruct the jury on an uncharged alternative means. The State charged Brinkley with committing attempted robbery under two statutory alternative means: by displaying what appeared to be a firearm or other deadly weapon, or inflicting bodily injury.[1] RCW 9A.56.200(1)(a)(ii), (iii). But, the jury was additionally instructed on the "armed with a deadly weapon" alternative means. RCW 9A.56.200(1)(a)(i).

The State does not dispute that instructional error occurred, but argues that the error was harmless. Ordinarily, this type of instructional error is prejudicial where "it is possible that the jury might have convicted the defendant under the uncharged alternative." State v. Doogan, 82 Wn. App. 185, 189, 917 P2d 155 (1996). And, here, the State presented evidence from which the jury could have concluded that Brinkley or his accomplice was armed with a deadly weapon. The State argued in closing that both participants were armed with deadly weapons. Thus, the jury would have been justified in believing it could find Brinkley guilty on the basis of the uncharged alternative means. Nevertheless, because exactly the same evidence supported both one of the charged

---

[1] RCW 9A.56.200 defining first degree robbery provides, in relevant part:
(1) A person is guilty of robbery in the first degree if:
    (a) In the commission of a robbery or of immediate flight therefrom, he or she:
        (i) Is armed with a deadly weapon; or
        (ii) Displays what appears to be a firearm or other deadly weapon;
or
        (iii) Inflicts bodily injury.

5

means and the uncharged alternative means, we are persuaded that the error was harmless.

The State could prove that Brinkley or Mattox were armed with a deadly weapon only by virtue of Easley's testimony that "one or the other" displayed what appeared to be a gun throughout the course of the robbery. There was no evidence, nor any claim, that either Brinkley or Mattox was armed with a deadly weapon but did not display it. Neither of the two firearms were apparently recovered, and the only evidence at trial regarding the weapons in connection to the events of the robbery consisted of Easley's descriptions of how they were used.[2] The jury also found Brinkley guilty of assault with a deadly weapon. RCW 9A.36.021(1)(c). The only evidence supporting this charge was Easley's testimony that Brinkley and Mattox brandished a gun while issuing violent threats and demands, causing reasonable apprehension or fear. Under the facts in this particular case, any juror who found that Brinkley or his accomplice was armed with a deadly weapon necessarily would have found that one or both of them displayed what appeared to be a deadly weapon—the alternative means that was properly described in the charging information.

---

[2] Munson said that while he did not observe either Brinkley or Mattox with a gun on the day of the robbery, Mattox normally had a gun with him, sometimes in a "locked box." Munson's testimony thus corroborated Easley's account. His testimony was not, however, sufficient to support Brinkley's conviction under the "armed with a deadly weapon" prong, because a person is not armed with a weapon unless it is "easily accessible and readily available for use." State v. Valdobinos, 122 Wn.2d 270, 282, 858 P.2d 199 (1993) (sufficiency of evidence for purposes of enhancement). The testimony about Mattox's ownership and usual possession of a weapon did not establish the required nexus between the crime and the deadly weapon. See State v. Barnes, 153 Wn.2d 378, 383, 103 P.3d 1219 (2005) (defining "armed" with respect to enhancement).

II. Double Jeopardy

Brinkley alternatively contends that his convictions for second degree assault and first degree robbery violate double jeopardy. Although there are several methods to determine the existence of a double jeopardy violation, Brinkley argues only that the merger doctrine applies, and therefore, we focus solely on that analysis.

We review his double jeopardy challenge de novo and may do so for the first time on appeal. State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005); State v. Adel, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998). Merger is a doctrine of statutory interpretation used to determine whether the legislature intended to impose multiple punishments for a single act that violates several statutory provisions. In re Pers. Restraint of Fletcher, 113 Wn.2d 42, 50-51, 776 P.2d 114 (1989). When the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime. State v. Vladovic, 99 Wn.2d 413, 419, 662 P.2d 853 (1983).

When an assault elevates a robbery to first degree, "generally the two offenses are the same for double jeopardy purposes." State v. Kier, 164 Wn.2d 798, 801-02, 194 P.3d 212 (2008). However, there is no per se rule that assault in the second degree merges into robbery in the first degree. Freeman, 153 Wn.2d at 774. Rather, a case-by-case approach is required. Id.

As explained, Brinkley was charged with first degree robbery under RCW 9A.56.200(1)(a)(ii-iii), which provides that robbery is elevated to the first degree if the defendant displays what appears to be a firearm or other deadly weapon or inflicts bodily injury in the commission of the robbery or in immediate flight from the robbery.

7

Robbery itself requires the taking of property by the use or threatened use of immediate force, violence, or fear of injury to a person or his property. RCW 9A.56.190. As instructed, the State had to prove that Brinkley or an accomplice took property from another, by "use or threatened use of immediate force, violence, or fear of injury."

Brinkley was also convicted of second degree assault under RCW 9A.36.021(1)(c), which provides that a person is guilty of second degree assault if he "[a]ssaults another with a deadly weapon." RCW 9A.36.21(c). Assault involves putting another in apprehension or fear of harm, regardless of whether the actor intends to inflict or is incapable of inflicting such harm. Kier, 164 Wn.2d at 806; State v. Elmi, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). To prove that Brinkley committed second degree assault, the State had to prove that Brinkley or his accomplice assaulted Easley "with a deadly weapon." RCW 9A.36.021(1)(c).

The State does not dispute that the merger doctrine is triggered here, because the second degree assault with a deadly weapon elevates the robbery to the first degree and the display of a firearm or deadly weapon to take property through force or fear is essential to the elevation. See Kier, 164 Wn.2d at 806. As in Kier, both charges required the State to prove that Brinkley's conduct or that of his accomplice created a reasonable apprehension or fear of harm. The display of a firearm or deadly weapon was the means of creating the necessary apprehension or fear.[3]

---

[3] The State does not argue against merger based on the fact that Brinkley was also charged with first degree robbery based on the infliction of bodily injury alternative means. RCW 9A.56.200(1)(a)(iii). This is presumably because the jury was not required to agree on an alternative means, and the prosecutor argued that it was Easley's reasonable fear of being shot that made him turn over his property. Thus, as in Kier, there is ambiguity in the jury's verdict which is resolved in Brinkley's favor under

8

Instead, the State urges us to apply an exception to the merger doctrine. Under this exception, "offenses may in fact be separate when there is a separate injury to 'the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element.'" Freeman, 153 Wn.2d at 778-79 (quoting State v. Frohs, 83 Wn. App. 803, 807, 924 P.2d 384 (1996)). There is no merger where the robbery and assault each had an independent purpose and effect, or a separate assault occurs during the course of a robbery. Freeman, 153 Wn.2d at 778; Kier, 164 Wn.2d at 814. In Vladovic, for example, the defendant's convictions did not merge because the kidnappings and robbery involved different victims and created separate and distinct injuries. Vladovic, 99 Wn.2d at 421-22.

The State argues that each crime had a distinct purpose and effect and should therefore be punished separately. The State draws temporal distinctions from the testimony and argues that the crime began as an assault on Easley and only later evolved into a robbery. The State cites Munson's testimony that shortly before the three left in Easley's car, Mattox came upstairs and said he was taking a "vote" on whether to rob Easley. The State also focuses on Easley's testimony that Brinkley and Mattox expressed several different motivations for their actions.

But, the evidence does not lend itself to a determination of distinct points when the robbery began and ended. According to the testimony, Brinkley and Mattox took property from Easley continuously throughout the time they held him in the basement

---

the rule of lenity, requiring merger. See Kier, 164 Wn.2d at 813-14 (rule of lenity applied, because it was not clear whether the jury determined that the same person was the victim of both the robbery and the assault).

until they finally left him at Dick's house. Easley testified that after he was dragged to the basement and punched, Brinkley and Mattox took jewelry and other property from his person. Then they took money from his wallet and looked through his things. After that, they took his keys, retrieved his safe, and took the items from the safe. Finally, they took his car. Although they made various other demands on him in the interim and gave several reasons for what they were doing, we are not persuaded by the evidence in the record that the assault and the robbery had an independent purpose or effect.

## III.   Statement Of Additional Grounds

In his pro se statement of additional grounds, Brinkley raises claims of juror misconduct and ineffective assistance of trial counsel related to a juror, who, after he was selected for the jury panel, volunteered that he had had some "contact" with Brinkley in the context of his work as a Corrections Department employee. Brinkley contends that the juror's failure to disclose his personal knowledge constitutes an irregularity in the proceedings that warrants a new trial. He also argues that his counsel should have requested further questioning of the juror. But, as the record indicates, the fact that the juror did not initially indicate that he knew Brinkley was not necessarily inconsistent with his later acknowledgement of some unspecified contact through his work.[4] Moreover, when the issue was initially brought up, the State requested that the juror be brought in for questioning. However, the court indicated that neither party had articulated a sufficient reason to justify further questioning. Brinkley fails to indentify an irregularity in the proceedings, or explain how he was prejudiced by his counsel's

---

[4] The juror initially indicated that he knew both the prosecutor and defense counsel.

alleged deficiency. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).

Brinkley raises additional claims of ineffective assistance of counsel, but because these arguments either involve matters outside of the trial court record or do not adequately inform the court of the precise nature of the alleged errors, they do not merit further review. See State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995); State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

Finally, Brinkley claims that the evidence that the crime eventually culminated in a murder was unfairly prejudicial and should not have been admitted. It does not appear that either party moved to exclude this evidence. Nor is it apparent that the evidence was necessarily prejudicial to him. Nevertheless, even if he had raised this issue below, it would have been within the discretion of the trial court to admit the res gestae evidence to complete the story of the crime. See State v. Grier, 168 Wn. App. 635, 644, 278 P.3d 225 (2012).

Because Brinkley's assault conviction merges into the robbery conviction, we remand with instructions to vacate the assault conviction and for resentencing. We otherwise affirm the judgment and sentence.

WE CONCUR:

11