IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　Respondent,<br><br>　　　v.<br><br>ALEXANDER YELL,<br><br>　　　　　　Appellant. | No. 87205-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Alexander Yell challenges his convictions for robbery in the first degree and assault in the second degree arising out of a shoplifting incident. He claims his assault conviction merges with his robbery conviction. He also claims that based on his indigency, the court improperly imposed the victim penalty assessment (VPA). We agree with Yell that the crimes merge and the independent purpose and effect exception to the merger doctrine does not apply, so convicting him for both crimes violates the constitutional prohibition on double jeopardy. We reverse the conviction for assault and the related firearm enhancement and remand for resentencing consistent with this opinion.

FACTS

On November 26, 2021, "Black Friday,"[1] Alexander Yell went to a Walmart in Kennewick and took some trading cards and a package of tuna. Three loss prevention officers (LPOs) observed him selecting cards in what they regarded as a suspicious manner and decided to follow and eventually confront him.

From the loss prevention office, LPO Kyle Cameron watched Yell's movements through the store using several surveillance cameras. The two other LPOs, Mauricio Martinez and Marthell Baza, followed Yell through the store and communicated with Cameron on a three-way call. Martinez and Baza observed Yell walk past the cash registers without paying for any merchandise. Martinez and Baza intercepted Yell in the store's vestibule and asked to speak with him about unpaid merchandise. Yell relinquished a box of cards and the tuna and moved past Martinez to exit the store. Martinez and Baza testified that Yell shoved Martinez before exiting. Yell testified that he did not shove anyone.

Martinez and Baza continued to follow Yell into the parking lot. Cameron left the loss prevention office and joined Martinez and Baza as they pursued Yell across the parking lot. Cameron proceeded to take Yell's picture as the group followed him.

When Yell reached a black Subaru, about 200 to 400 feet away from the store, he revealed a 9 mm handgun. Baza also drew a handgun. Baza shot at least three rounds and struck Yell in the arm and the leg. Yell shot at least one

---

[1] The day after Thanksgiving.

round and did not hit anyone. Yell fled from the scene, but police apprehended him at a nearby residence almost immediately afterwards.

The State charged Yell with three felonies: robbery in the first degree (count I), assault in the second degree (count II), and unlawful possession of a firearm in the first degree (count III). Counts I and II included firearm enhancement allegations. The first amended information identified Baza as the sole victim for both the assault and the robbery.

At trial, Yell admitted he had taken one box of Mariners cards and tuna, and he "regret[ted] stealing," but that he "handed the items over" when Martinez and Baza confronted him in the vestibule and told them that he had given them everything. He also testified that he drew and racked his gun before Baza drew his own weapon because he wanted Martinez, Cameron, and Baza to leave him alone.

The jury convicted Yell as charged of robbery in the first degree, assault in the second degree, and unlawful possession of a firearm in the first degree, and returned special verdicts finding he was armed with a firearm at the time of the commission of the robbery and the assault. At sentencing, Yell argued that the assault conviction merged into the robbery conviction and that punishing him for both offenses would violate double jeopardy protections. The court disagreed and sentenced Yell to a total of 195 months of confinement for the three convictions.

Yell timely appeals.

DISCUSSION

Yell contends that entering convictions for both robbery in the first degree and assault in the second degree violated double jeopardy protections and that his assault conviction must be vacated, along with the accompanying firearm enhancement. The State argues that the convictions do not violate double jeopardy because the assault had an independent purpose or effect from the robbery, so the merger doctrine does not apply. Yell also challenges the imposition of the VPA.

I.    Double Jeopardy

The State is permitted to bring multiple charges arising from the same criminal conduct in a single proceeding. State v. Michielli, 132 Wn.2d 229, 238-39, 937 P.2d 587 (1997). However, both the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution prohibit multiple punishments for the same offense. State v. Kier, 164 Wn.2d 798, 803, 194 P.3d 212 (2008); CONST. art. I, § 9 ("No person shall be . . . twice put in jeopardy for the same offense."); U.S. CONST. amend. V (same). "Within constitutional constraints, the legislature has the power to define criminal conduct and assign punishment to it." Kier, 164 Wn. 2d at 803. " 'Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense.' " State v. Freeman, 153 Wn.2d 765, 771, 108 P.3d 753 (2005) (quoting In re Pers. Restraint of Orange, 152

Wn.2d 795, 815, 100 P.3d 291 (2004)). We review double jeopardy claims de novo. Kier, 164 Wn.2d at 804.

The Washington Supreme Court has set forth a three-part test for determining whether the legislature intended multiple punishments in a particular situation. Kier, 164 Wn.2d at 804 (citing State v. Calle, 125 Wn.2d 769, 776, 888 P.2d 155 (1995)). First, a court must consider the express or implicit legislative intent based on the criminal statutes involved. Id. Second, "[i]f the legislative intent is unclear, we may then turn to the 'same evidence' Blockburger test, which asks if the crimes are the same in law and in fact." Id. (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). We consider the elements of the crimes as charged and proved, not merely as the level of an abstract articulation of the elements. Freeman, 153 Wn.2d at 777. "Third, if applicable, the merger doctrine may help determine legislative intent, where the degree of one offense is elevated by conduct constituting a separate offense." Kier, 164 Wn.2d at 804. However, "even if two convictions would appear to merge on an abstract level under this [third step of the] analysis, they may be punished separately if the defendant's particular conduct demonstrates an independent purpose or effect of each." Id. (citing Freeman, 153 Wn.2d at 773).[2]

---

[2] This same test has been described more recently as having four parts:

> We follow four analytical steps to determine legislative intent regarding whether cumulative punishment is authorized: (1) consideration of any express or implicit legislative intent, (2) application of the Blockburger, or "same evidence," test, (3) application of the "merger doctrine," and (4) consideration of any independent purpose or effect that would allow punishment as a separate offense.

State v. Arndt, 194 Wn.2d 784, 816, 453 P.3d 696 (2019) (citing Freeman, 153 Wn.2d at 771-73).

In Kier, the Washington Supreme Court held its analysis in Freeman of the same robbery and assault statutes at issue here was correct and accurately reflected the legislature's intent, and "second degree assault merges into first degree robbery." Kier, 164 Wn.2d at 805 (citing Freeman, 153 Wn.2d at 773-78). Nevertheless, a case by case approach is required to determine whether robbery in the first degree and assault in the second degree are the same for double jeopardy purposes. Freeman, 153 Wn.2d at 780. "Generally, . . . these two crimes will merge unless they have an independent purpose or effect." Id.

"The general definition of robbery requires the taking of property by the use or threatened use of immediate force, violence, or fear of injury to a person or his property, or the person or property of anyone." Kier, 164 Wn.2d at 805-06 (citing RCW 9A.56.190). In this case, the crime was elevated to the first degree under RCW 9A.56.200(1)(a)(i), which specifies that "[a] person is guilty of robbery in the first degree: (a) if in the commission of a robbery or immediate flight therefrom, he or she: (i) [i]s armed with a deadly weapon." As was the defendant in Kier, 164 Wn.2d at 806, here, Yell was also convicted of assault in the second degree pursuant to RCW 9A.36.021(1)(c), under which "[a] person is guilty of assault in the second degree if he or she . . . [a]ssaults another with a deadly weapon." Because there is no definition of assault in the criminal code, Washington courts apply a common law definition. Kier, 164 Wn.2d at 806 (citing State v. Walden, 67 Wn. App. 891, 893, 841 P.2d 81 (1992)). In this case, the jury was instructed on two of the common law definitions: (1) ". . . an attempt, with unlawful force, to inflict bodily injury upon another. . . " and (2) ". . . putting

another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm."

Both charges required the State to prove that Yell's conduct created a reasonable apprehension or fear of harm. Additionally, because the charges required proof that Yell was armed with a deadly weapon, this was the means of creating that apprehension or fear. See Kier, 164 Wn.2d at 806 (as defendant was charged with being armed with or displaying a deadly weapon, this was means of creating apprehension or fear). Thus, "[t]he merger doctrine is triggered when second degree assault with a deadly weapon elevates robbery to the first degree because being armed with or displaying a firearm or deadly weapon to take property through force or fear is essential to the elevation." Id.

The State expressly concedes in its brief that "[t]he crimes do merge under the rule of lenity." We accept the State's concession. We agree with the parties that here, as in Kier, there was "an ambiguity in the jury's verdict, which, under the rule of lenity, must be resolved in the defendant's favor." 164 Wn.2d at 811.

In Kier, the court was faced with the same issue as here, whether a conviction for assault in the second degree merged with a conviction for robbery in the first degree. Id. at 805. The defendant in that case had participated in a car robbery with two victims. Id. at 802. During closing argument, the State specified that the driver, Hudson, was the victim of the robbery and the passenger, Ellison, was the victim of the assault. Id. 813. The evidence at trial included testimony that the defendant first pointed a gun at Hudson, who was able to break away,

7

and then pointed the gun at Ellison. Id. at 802. The defendant then ordered Ellison to get out of the vehicle, and he complied. Id. The defendant then came around and asked if Ellison had any money. Id. 802-03. Ellison answered he did not, and the defendant and two others drove away with both their and Hudson's cars. Id. at 803.

First, looking at the jury instructions, the Kier court noted that the "to convict" jury instruction on the robbery in the first degree count did not identify a victim, but the assault in the second degree instruction specified Ellison was the victim, so "a reasonable jury [could] conclude that the robbery instruction applied equally to Hudson or Ellison, or both." Id. at 812. Second, proof of robbery does not require the specific identity of the victim or victims, but where "the jury heard evidence describing both Hudson and Ellison as victims of the robbery and the instruction did not specify a victim, the basis for Kier's conviction is ambiguous." Id. Additionally, the court found the State's election in closing argument was not sufficient to overcome this ambiguity, as courts cannot consider closing statements in isolation but must look at the evidence presented overall. Id. at 813. The Kier court concluded that the evidence and instructions allowed the jury to consider Ellison a victim of the robbery as well as the assault, so the verdict was ambiguous, and the rule of lenity required the merger of the assault in the second degree conviction into the robbery in the first degree conviction. Id. at 814.

Here, as in Kier, the jury instructions identified a specific victim, Baza, for the assault, but no specific victim for the robbery. In its briefing, the State

8

describes its theory at trial was that Yell concealed the firearm on his person during his time in Walmart, stole merchandise, and used force to retain the merchandise when confronted by Martinez in the vestibule. Specifically, the State argued that because "[a]ny force, however slight, is sufficient" to prove robbery, the robbery was complete by the time Yell left the building. But Yell testified that he had left the firearm in the wheel well of a car in the parking lot and was not carrying it in the store. The jury instructions state that "in the commission of these acts or in immediate flight therefrom the defendant was armed with a deadly weapon." Therefore, the State's briefing acknowledges that if the jury believed Yell's story about stashing the gun in the parking lot, "it is possible the jury concluded that the force used to retain the merchandise was when the defendant [] pulled out a firearm and shot at the LPOs, not when he pushed LPO Baza in the vestibule," so Yell's argument that the crimes merge under the rule of lenity is "well-taken under State v. Kier."

Nevertheless, the State argues that even if assault in the second degree and robbery in the first degree merge, here, they may be punished separately because there is an independent purpose or effect for each.[3] "[A] well established exception . . . may operate to allow two convictions even when they formally appear to be the same crime under other tests." Freeman, 153 Wn.2d at 778. The "independent purpose or effect" exception applies where there is a

---

[3] The State also initially argues that regardless of whether the assault and robbery convictions merge, the associated firearm enhancements both survive. However, later in its brief, the State concedes that if the associated crime is vacated, the accompanying firearm enhancement must also be vacated. The latter is correct. See State v. Davis, 177 Wn. App. 454, 465 n.10, 311 P.3d 1278 (2013) (when an offense is vacated, the associated firearms enhancement must be vacated).

separate injury to "the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element." Id. at 778-79 (quoting State v. Frohs, 83 Wn. App. 803, 807, 924 P.2d 384 (1996)). "This exception is less focused on abstract legislative intent and more focused on the facts of the individual case." Id. at 779.

In Kier, while the court held the State had offered no facts to support its argument that the independent purpose or effect exception applied, it did "not rule out the possibility that, in the course of a robbery, a separate assault on a victim may occur." 164 Wn.2d at 814. For example, in State v. Prater, defendants broke into an apartment and forced a husband and wife to lie on the floor, then sent the wife to look for money. 30 Wn. App. 512, 514, 635 P.2d 1104 (1981), cited in Freeman, 153 Wn.2d at 779. While she was searching, one of the defendants shot the husband. Prater, 30 Wn. App. at 514. The court reasoned that the defendants could be separately punished for the assault as it "was no part of the robbery then being conducted for the purpose of obtaining money," and indeed, "[b]y disabling him, the [defendants] effectively hindered rather than aided the commission of the crime." Id. at 516. By contrast, in the Zumwalt case in Freeman, where "the merger doctrine applie[d] to merge Zumwalt's first degree robbery and second degree assault convictions," 153 Wn.2d at 778, even though Zumwalt inflicted severe harm, the prosecutor charged Zumwalt only with assault in the second degree. Id. at 779. "[T]he fact that the violence used was excessive even in relation to the crime charged" did not establish the exception to merger. Id.

The State argues that here, Yell's assault of Baza had an independent purpose or effect because it occurred after defendant completed the robbery, when the LPOs followed him to the parking lot to photograph the vehicle. The State relies on State v. Arndt, 194 Wn.2d 784, 453 P.3d 696 (2019), to argue that proof of additional victims was not needed to establish conduct that is "manifestly dangerous," and by pulling out a gun in a parking lot at noon on Black Friday, Yell's actions were "extremely reckless" and "manifestly dangerous."

Yell contends that the State misunderstands Arndt. We agree. In Arndt, the defendant was convicted of aggravated murder in the first degree and arson in the first degree, with the same act of arson underlying the arson charge and establishing the aggravating circumstance for the murder. Id. at 789, 791. Proof of arson in the first degree requires that the fire or explosion be "manifestly dangerous to any human life," RCW 9A.48.020(1)(a), while for the charge of aggravated murder in the first degree, the jury found by special verdict that the arson had an "impact on persons other than the victim." Id. at 791-92, 819. Because the two crimes had different purposes and victims, the court held that the independent purpose or effect exception to merger applied. Id. at 819. But in this case, the jury was not asked to find that the conduct was "manifestly dangerous to human life," as neither the assault nor the robbery statute includes that requirement, and we may not speculate "that a crime may have had an independent purpose or effect." In re Pers. Restraint of Knight, 2 Wn.3d 345, 360, 538 P.3d 263 (2023). The independent purposes and effects test exception

to the merger doctrine does not apply based on facts " 'not found by the jury.' " Id. (quoting Freeman, 153 Wn.2d at 779).

Here, other than the misguided argument based on Arndt, the State does not offer an explanation of how the assault in the second degree had an independent purpose or effect from the robbery in the first degree. The "to convict" instruction for robbery in the first degree required that "force or fear was used by the defendant to obtain or retain possession of the property to prevent or overcome resistance to the taking" and "in the commission of these acts or in immediate flight therefrom the defendant was armed with a deadly weapon." As the State concedes, there was evidence at trial from which the jury could conclude that the force used to retain the merchandise was when Yell pulled out a gun in the parking lot—i.e., the purpose or effect of the assault on Baza was to effectuate the robbery. Indeed, the State emphasized that Yell still had merchandise on him even after he handed items over in the vestibule, which would have permitted the jury to assume the robbery was ongoing even after he went to the parking lot. The independent purpose or effect exception to the merger doctrine does not apply.[4]

## II. VPA

Yell asserts that this court should strike the VPA because he is indigent and recent amendments to the statute bar courts from imposing such fees on indigent defendants. The State agrees. The relevant statute was amended to bar courts from imposing the VPA on indigent defendants, see RCW 7.68.035(4),

---

[4] Because of our disposition, we need not address Yell's assignment of error regarding the appropriate term of confinement for the conviction for assault in the second degree.

and this amendment applies to matters pending on direct appeal. State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Thus, the new judgment and sentence entered after resentencing should reflect this change in the law.

CONCLUSION

We hold that Yell's conviction for assault in the second degree merges into his conviction for robbery in the first degree. We reverse the conviction for assault in the second degree and the imposition of the associated firearm enhancement[5] and remand for resentencing consistent with this opinion.

_Chung, J._

WE CONCUR:

_Díaz, J._

_Hazelrigg, ACJ_

---

[5] "When a court finds convictions for two offenses violate the double jeopardy proscription against multiple punishments it must vacate one of the convictions." Davis, 177 Wn. App. at 465 n.10 (citing State v. Turner, 169 Wn.2d 448, 463-66, 238 P.3d 461 (2010)). Additionally, when an offense is vacated, the associated firearms enhancement must be vacated. Davis, 177 Wn. App. at 465 n.10.