# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 69516-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JERRY UVARIUS TOWNSEL, | ) | |
| | ) | FILED: November 17, 2014 |
| Appellant. | ) | |
| | ) | |

LEACH, J. — Jerry Townsel appeals his convictions for kidnapping in the

first degree and assault in the first degree. He alleges prosecutorial misconduct

and challenges the court's denial of his motion to substitute counsel. He also

contends that his convictions violate the constitutional prohibition against double

jeopardy. Although the prosecutor acted improperly in several instances,

Townsel did not object at trial and does not show the challenged conduct to be

so ill intentioned and flagrant that any prejudice could not have been cured by a

jury instruction. Townsel does not show that the court abused its discretion by

denying his motion to substitute counsel, and his convictions do not subject him

to double jeopardy because each crime requires proof of a fact the other does

not. We affirm.

FACTS

R.O., age 20, and Jerry Townsel, age 43, met in a Seattle park in October 2011. Homeless, methamphetamine addicted, and schizophrenic, R.O. had auditory hallucinations when she used methamphetamine. After Townsel asked her if she had a pipe, R.O. followed him to a motel room, where they smoked methamphetamine together and had consensual sex. This became a "routine," and R.O. believed that they were in a relationship. At about 11:00 p.m. on November 2, 2011, R.O., Townsel, and Deryl Jones went to a vacant house, where they smoked methamphetamine. At some point, Townsel and R.O. went into the bathroom. A lengthy and violent altercation followed. Later the next day, hospital personnel documented R.O.'s extensive injuries: heavy bruising on her face and body, orbital fractures, conjunctival hemorrhage, fractures to both sides of her jaw, and a wound on her forearm that exposed the tendons. At his arrest, Townsel had lacerations on his neck and face and scratches on his wrist.

The State charged Townsel with kidnapping in the first degree, assault in the first degree, felony harassment, and second degree rape, all designated as domestic violence offenses. The State also alleged a deliberate cruelty aggravator for the kidnapping and assault charges and an ongoing pattern of abuse aggravator for all counts.

Twice before trial, Townsel moved to substitute counsel, asserting that he had "lost faith" in his attorney's representation and alleging conflict of interest and breakdown in communication. The court denied the motions.

A jury convicted Townsel of first degree kidnapping and first degree assault. The jury acquitted Townsel of harassment, was unable to reach a verdict on the rape charge, and did not agree on any of the special verdicts.

Townsel appeals.

## ANALYSIS

Townsel alleges prejudicial prosecutorial misconduct "impervious to curative instruction." He also contends that because the trial court did not conduct an adequate inquiry, the court abused its discretion in denying his motion to substitute counsel. Finally, he argues that his convictions for both kidnapping in the first degree and assault in the first degree subject him to double jeopardy. We consider these claims in the order described.

Prosecutorial Misconduct

Because Townsel did not object to any of the alleged prosecutorial misconduct at trial, he must demonstrate that any misconduct was so flagrant and ill intentioned that it caused prejudice incurable by a proper jury instruction.[1] A defendant claiming prosecutorial misconduct bears the burden of establishing

---

[1] State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

that the challenged conduct was both improper and prejudicial.[2] Prejudice occurs only if "there is a substantial likelihood the instances of misconduct affected the jury's verdict."[3] We review misconduct claims in the context of the total argument, the evidence addressed, the issues in the case, and the jury instructions.[4]

Townsel contends first that by comparing the jury's decision to choices made in everyday life, the prosecutor "improperly diluted the State's burden of proof." The prosecutor stated in closing argument that he expected the jury to understand its instructions, which are "written for our citizenry to apply the law":

> [F]or most of us, we have a kid, and [if] we think our kid did something bad, we're not going to punish our child for it, unless and until we know that they, indeed, did something bad beyond any doubt that's reasonable.
>
> If there is a reasonable doubt that your son did something, you're not going to ground him because you'd be worried. No. What if I am grounding him unjustly?
>
> Reasonable doubt is a doubt that exists after fully and fairly considering the evidence. It's not some foreign, scientific, lofty term, that can only exist in the hallowed halls of academia, or in the temples of justice. It's a standard that we have to apply every time we're trying to make a decision about what the best choice is.
>
> And if we can rule out any doubts that are reasonable, we've reached beyond a reasonable doubt. It's certainly higher than more likely than not. But the truth is if that there's no doubt that's

---

[2] State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).
[3] State v. Pirtle, 127 Wn.2d 628, 672, 904 P.2d 245 (1995); see also State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011).
[4] State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).

reasonable, then you're beyond a reasonable doubt. I know it sounds like we're talking in circles, but it's important that we don't make this such a lofty goal, that it's impossible to reach.

A prosecutor may not misstate or shift the State's burden to prove the defendant's guilt beyond a reasonable doubt.[5] Here, the prosecutor misstated the reasonable doubt standard by characterizing it as "a standard that we have to apply every time we're trying to make a decision about what the best choice is." Though his illustration contained language from the jury instructions,[6] by likening the reasonable doubt standard to the one used for everyday decisions, the prosecutor improperly "trivialized and ultimately failed to convey the gravity of the State's burden and the jury's role in assessing its case."[7] But because Townsel does not show that this misstatement was so flagrant and ill intentioned that any prejudice could not be cured by proper instruction, he does not establish prosecutorial misconduct.

Townsel also alleges that the prosecutor committed misconduct and violated Townsel's right to present a defense by disparaging defense counsel during closing. Defense counsel challenged R.O.'s credibility because of her

---

[5] State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014).

[6] This instruction provides in pertinent part: "A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence."

[7] State v. Anderson, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009).

drug addiction and mental health problems. In closing, the prosecutor discussed

a bloody shower curtain recovered from the crime scene:

> It was admitted into evidence, but you don't get it. It's one of those pieces of evidence that's so bloody, you're probably grateful, right? You don't get it when you go back in to deliberate, because it's a biohazard. That's what defense was trying to do to [R.O.]. Let's grind her into the ground enough, let's make her become as untouchable as that shower curtain or that bathroom floor, and let's blend her in with all these drug addicts that can't be trusted. . . .She loses her humanity and stops being a person.

Townsel contends that the prosecutor "crossed the line in accusing counsel of

treating [R.O.] like a bloody shower curtain and destroying her humanity."

Townsel also alleges that with these remarks, the prosecutor "injected emotion

and sympathy into the deliberation process by creating the theme of why the jury

should care about [R.O.]. That constitutes an appeal to the passions of the jury."

A prosecutor "is entitled to make a fair response to the arguments of

defense counsel"[8] and has "wide latitude in closing argument to draw reasonable

inferences from the evidence and to express such inferences to the jury."[9] But

"[i]t is improper for the prosecutor to disparagingly comment on defense

counsel's role or impugn the defense lawyer's integrity."[10] Here, defense counsel

sought to undermine R.O.'s credibility by emphasizing and eliciting testimony

---

[8] State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994).
[9] State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997) (Stenson I).
[10] State v. Thorgerson, 172 Wn.2d 438, 451, 258 P.3d 43 (2011).

-6-

about R.O.'s mental health, drug abuse, and sometimes bizarre prior statements. In opening statement, the prosecutor first introduced the theme that R.O. was "one of our city's discarded children." While defense counsel characterized the circumstances of the case as "hell on earth . . . a couple of lives where that's the only purpose, drugs," counsel also told the jury, "[T]his isn't a case where you have to not feel sorry for [R.O], but this is a case where you have to consider the source, all of it, put it in context, as you're evaluating this evidence." Likewise, in closing argument, defense counsel stated,

> [R.O] is a person who engenders sympathy. There's no reason for any of us not to consider the life that she's had, and hope that the rest of her life is a whole heck of a lot better.
>
> This isn't a case about trying to cast her in a bad light or anything like that. It's okay for all of us . . . to feel pretty bad for her circumstances.
>
> . . . .
>
> . . . . [But] we're here for you to decide if these allegations are actually true.

Defense counsel elicited testimony about R.O.'s drug addiction and psychosis to cast doubts on her sense perceptions. This was appropriate defense strategy where R.O. was the State's primary witness and her addiction and mental illness were not in dispute. Defense counsel did not "grind her into the ground" or make her "untouchable" by doing so. While the prosecutor's

arguments may not have directly impugned defense counsel's integrity[11] or prevented Townsel from presenting a defense, they mischaracterized the defense strategy.

The prosecutor's language here also improperly appealed to the emotions of the jury. He told the jury that he was frustrated because if this case involved a dog, "it would be over. . . . He'd be up the river. But because it's a person, with the context and a history and a background, . . . we get to pick her apart." He referred to R.O. as "just a little kid" for whom the State was "asking for justice." He told the jury that they should care because

> the law should still matter for people that we usually ignore. It's got to uphold the rights of human beings at both ends of the spectrum, because of victims like [R.O.], . . . [otherwise] the whole system itself crumbles. We've all heard of that expression, right? No one is above the law, but no one's beneath it, either.

A prosecutor may not invite a jury to decide a case on the basis of emotional appeals.[12] Although proper argument may include references to the nature of the crime and its effect on the victim and "'[a] prosecutor is not muted

---

[11] See Thorgerson, 172 Wn.2d at 450-51 (misconduct where prosecutor referred to defense's case as "bogus" and "sleight of hand," implying wrongful deception or dishonesty); State v. Warren, 165 Wn.2d 17, 29-30, 195 P.3d 940 (2008) (improper to call defense counsel's argument "'a classic example of taking these facts and completely twisting them to their own benefit, and hoping that you are not smart enough to figure out what in fact they are doing'"); Lindsay, 180 Wn.2d at 438 (holding prosecutor's characterization of defense's closing argument as "a crock" impermissibly impugned counsel's integrity).

[12] In re Det. of Gaff, 90 Wn. App. 834, 841, 954 P.2d 943 (1998).

because the acts committed arouse natural indignation,'"[13] the weight of the prosecutor's argument here was an exhortation to the jury to decide the case because they cared about R.O. and other "victims like [R.O.]." This was improper, as was the further implication that the jury should decide the case for the sake of the "discarded" members of the community or to keep the justice system itself from "crumbl[ing]."[14] Although improper, the prosecutor's remarks here do not constitute "irrelevant and inflammatory matter" that "has a natural tendency to prejudice the jury against the accused."[15] Because Townsel does not show prejudice incurable by proper instruction, he does not establish prosecutorial misconduct.

---

[13] State v. Borboa, 157 Wn.2d 108, 123, 135 P.3d 469 (2006) (quoting State v. Fleetwood, 75 Wn.2d 80, 84, 448 P.2d 502 (1968) and holding prosecutor's repeated questioning about witnesses' emotional reaction to events and description of charges as "horrible" in closing statement were not improper appeal to jurors' passion and prejudice).

[14] See State v. Powell, 62 Wn. App. 914, 918-19, 816 P.2d 86 (1991) (misconduct to tell jurors that a not guilty verdict in child molestation case would "'declar[e] open season on children'" and send message that adults won't believe children who report abuse); State v. Bautista-Caldera, 56 Wn. App. 186, 195, 783 P.2d 116 (1989) (misconduct to exhort jury to "'[l]et [the victim] and children know that you're ready to believe them and [e]nforce the law on their behalf'") (final alteration in original).

[15] State v. Miles, 73 Wn.2d 67, 70, 436 P.2d 198 (1968) (improper and prejudicial to admit hearsay evidence alleging a plan by defendants to perpetrate a robbery like the one with which they were charged); see also State v. Belgarde, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988) (improper and prejudicial to describe American Indian defendant as a leader of a "'deadly group of madmen'" and "'butchers that kill indiscriminately'"); State v. Claflin, 38 Wn. App. 847, 850, 690 P.2d 1186 (1984) (improper and prejudicial to read "'vivid and highly inflammatory'" poem by anonymous rape victim to jury during closing argument).

Finally, Townsel contends that the prosecutor committed misconduct by expressing a personal opinion about Townsel's credibility. During cross-examination, the prosecutor confronted Townsel with contradictions between the account he gave a detective after his arrest and his trial testimony. In an angry outburst, Townsel accused the prosecutor of violating his constitutional rights and doing whatever he could to convict him, stating, "You just need the win on your record." After the prosecutor resumed questioning Townsel, the following exchange occurred:

Q: How many changes do we have in your story right now, Mr. Townsel?

A: As far as I know, probably two.

Q: I'm looking at at least seven.

A: No. Tell me those seven.

Q: Let's just keep going.

A: Come on now, tell me those seven, so I can see what you're talking about, because I know of this and I know of what I told my attorney. So tell me the seven.

Q: When I'm talking about this, I don't consider this one lie, I consider this 500 lies.

A: Oh, come on, man. Come on. You just said seven of them, so that should be easy, if there's 1,200 of them, show me the seven of them, that I've changed the story seven times.

The prosecutor responded, "Stick around for closing, and you'll see them all, okay?" Townsel argues that the prosecutor expressed an "unmistakable personal opinion that Townsel had lied."

A prosecutor may not express a personal belief about a witness's credibility.[16] But "counsel may comment on a witness' veracity as long as he does not express it as a personal opinion and does not argue facts beyond the record."[17] We examine the challenged comments in context.[18] Because prosecutors have wide latitude to argue reasonable inferences from the facts concerning witness credibility, we do not find prejudicial error unless it is "clear and unmistakable" that counsel is expressing a personal opinion.[19]

The prosecutor's comments, which the State dismisses as nothing more than "somewhat sarcastic retorts to Townsel's continued goading," were improper. While the remarks concerned evidence in the record of Townsel's inconsistent statements and in context cannot be characterized as a "clear and unmistakable" expression of personal opinion,[20] they were an unprofessional

---

[16] Warren, 165 Wn.2d at 30.

[17] State v. Smith, 104 Wn.2d 497, 510-11, 707 P.2d 1306 (1985).

[18] McKenzie, 157 Wn.2d at 53.

[19] State v. Allen, 176 Wn.2d 611, 631, 294 P.3d 679 (2013).

[20] Compare Lindsay, 180 Wn.2d at 438 (while a prosecutor's use of words like "preposterous" and "ridiculous" are not, without more, an improper expression of personal opinion, prosecutor's remarks that defendant should not "'get up here and sit here and lie'" and that defendant's testimony was "'the most ridiculous thing I've ever heard,'" along with reference to defense theory as "a crock," impermissibly expressed prosecutor's personal opinion to jury), with

-11-

digression from proper cross-examination. Moreover, with the statement, "Stick around for closing and you'll see them all," the prosecutor improperly commented on Townsel's earlier voluntary absences from the courtroom. Here again, because Townsel does not show the prosecutor's improper statements prejudiced him, Townsel does not demonstrate a right to relief.

Townsel further contends "the cumulative misconduct was prejudicial and impervious to curative instruction." But Townsel does not show a substantial likelihood that the prosecutor's cumulative misconduct affected the jury's verdict. Because he does not, he is not entitled to relief. For the same reason, we also reject his alternative argument that counsel provided ineffective assistance by not objecting or requesting a curative instruction.[21]

## Denial of Motion To Substitute Counsel

Townsel next challenges the trial court's denial of his motion to substitute counsel. He alleges both an irreconcilable conflict and a complete breakdown in communication, contending that "the court's inquiry was insufficiently searching. As a result, the court was not in a position to make an informed decision on the matter."

---

Anderson, 153 Wn. App. at 430-31 (in context, not expression of personal opinion where prosecutor's remarks characterized defendant's testimony as "'made up on the fly,'" "'ridiculous,'" and "'utterly and completely preposterous'").

[21] See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (defendant must show both that counsel's performance was deficient and that this deficient performance prejudiced the defense).

When the attorney-client relationship completely collapses, the refusal to substitute new counsel violates the defendant's right to effective assistance.[22] To warrant substitution of counsel, a defendant must show good cause, "'such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication.'"[23] "Generally, a defendant's loss of confidence or trust in his counsel is not sufficient reason to appoint new counsel."[24] To determine if the trial court properly denied Townsel's motion to substitute counsel, we consider (1) the extent of the conflict, (2) the adequacy of the trial court's inquiry, and (3) the timeliness of the motion.[25] We review a trial court's refusal to appoint new counsel for abuse of discretion.[26] A court abuses its discretion when its decision adopts a view that no reasonable person would take or is based on untenable grounds or reasons.[27]

---

[22] State v. Cross, 156 Wn.2d 580, 606, 132 P.3d 80 (2006).

[23] State v. Thompson, 169 Wn. App. 436, 457, 290 P.3d 996 (2012) (quoting State v. Schaller, 143 Wn. App. 258, 267-68, 177 P.3d 1139 (2007)), review denied, 176 Wn.2d 1023 (2013).

[24] State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004); see also Cross, 156 Wn.2d at 606 ("[T]here is a difference between a complete collapse and mere lack of accord."); State v. Sinclair, 46 Wn. App. 433, 436, 730 P.2d 742 (1986) (defendant's "general discomfort" with attorney's representation did not constitute a valid reason to substitute counsel).

[25] In re Pers. Restraint of Stenson, 142 Wn.2d 710, 723-24, 16 P.3d 1 (2001) (Stenson II) (adopting test set out in United States v. Moore, 159 F.3d 1154, 1158-59 (9th Cir. 1998)).

[26] Cross, 156 Wn.2d at 607.

[27] State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

First, we consider the extent of the conflict by examining "the extent and nature of the breakdown in communication between attorney and client and the breakdown's effect on the representation the client actually receives."[28] To warrant substitution of counsel, the conflict or breakdown must prevent the attorney from providing effective assistance.[29]

Before trial, Townsel contended that he had an "ongoing conflict" with his defense attorney arising from counsel's failure to "properly inform Defendant of the State's request to subpoena medical (confidential) records" or to object to the release of those records.[30] Townsel stated that he had "lost faith in counsel's representation."

On June 11, the trial court held a hearing on Townsel's motion to substitute counsel. After reading the motion, the court asked Townsel, "Anything else you want to say, sir?" Townsel replied, "That's it, Your Honor." Townsel then told the court that defense counsel "knew about [the search warrant for his records] and he did not tell me about this until half a month down . . . [and] there are several other things where we're in conflict, you know. It's not working and this is my life." Finding no conflict, the court denied Townsel's motion. Townsel

---

[28] Stenson II, 142 Wn.2d at 724.

[29] Schaller, 143 Wn. App. at 268.

[30] Townsel faulted defense counsel for not objecting to the prosecutor's securing of Townsel's King County jail medical records via search warrant. The prosecutor sought records related to Townsel's physical injuries at his arrest. Defense counsel was unaware of the search warrant until after its execution.

then told defense counsel that he would not appear for that afternoon's hearing on defense's motion to dismiss. Townsel told the court, "I asked him not to make the motion. We're in conflict of interest," and that defense counsel and the prosecutor "make deals on what they say to each other and I don't want that."

On June 20, the court heard pretrial motions. Against his attorney's advice, Townsel gave the court a document titled "Motion and Brief for a Garcia Hearing," in which he alleged "divided loyalties as well as conflicts of int[e]rest."[31] The trial court warned Townsel about the risks of speaking contrary to his counsel's advice but said, "I don't want to make it seem like we're shutting you down. . . . If there's something you absolutely have to say, what is it, sir?" Townsel made various allegations of ineffectiveness: that counsel had not given him "the rest of the discovery," come to see him, or adequately prepared for trial. The trial court found that "there's been no showing of a conflict here" and that Townsel's statements about counsel's alleged ineffectiveness were self-contradictory or demonstrably false. The court ruled, "To the extent that this is a motion it is denied." Townsel became upset and got up to leave the courtroom.

---

[31] Townsel referred to United States v. Garcia, 517 F.2d 272, 278 (5th Cir. 1975), abrogated on other grounds by Flanagan v. United States, 465 U.S. 259, 263 n.2, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984). If a defendant chooses to proceed with representation by counsel who has a conflict of interest, a court must conduct what is now known as a "Garcia hearing" to ensure a valid waiver by the defendant of his or her Sixth Amendment right to conflict-free counsel. United States v. Garcia-Jasso, 472 F.3d 239, 243 (5th Cir. 2006).

The judge called a recess to give Townsel time to "cool down." Though after the recess Townsel repeated, "I don't want him representing me," he stayed for the rest of the hearing.

The next day, Townsel initially refused to appear for jury selection.[32] Defense counsel told the court, "Clearly we have a breakdown of communication between myself and Mr. Townsel. . . . He's simply not communicating with me, and, in effect, ordering me not to talk to him." When Townsel arrived in court, he continued to complain about defense counsel, threatening to become disruptive if forced to be present. When he became disruptive, the court noted for the record that Townsel's behavior "appears to be tactical and purposeful" and had deputies remove Townsel from the courtroom. Defense counsel moved to substitute counsel, reiterating that he and Townsel had a "breakdown in communication." But counsel acknowledged that the previous day, Townsel spoke to him and answered his questions. The court denied the motion, finding that Townsel was engaging in "intentional tactical misconduct, designed to obtain what he wants. It's inappropriate under any measure."

"'It is well settled that a defendant is not entitled to demand a reassignment of counsel on the basis of a breakdown in communications where

---

[32] Though the court signed a "drag order" to compel his attendance, Townsel eventually came to court of his own volition.

-16-

he simply refuses to cooperate with his attorney[ ].'"[33]  Townsel does not show how his alleged grievances or general frustration amounted to a conflict of interest or a complete breakdown in communication.  The nature and extent of the alleged conflict weighs against finding an abuse of discretion.

Turning to the second factor, the record shows that the court made adequate inquiry.  The court heard two motions from Townsel, invited him to state his concerns at two separate hearings, and allowed defense counsel and the State to respond.  Because the court allowed Townsel to express his concerns fully, inquired into them appropriately, and concluded properly that there was no conflict or complete breakdown in communication preventing effective assistance, Townsel fails to show that the court's inquiry was insufficient.

Finally, we consider the third factor, the motion's timeliness.  To assess the timeliness of a motion to substitute counsel, this court balances the "'resulting inconvenience and delay against the defendant's important constitutional right to counsel of his choice.'"[34]  Here, after eight months of representation, Townsel first moved to substitute counsel just over a week before trial.  New counsel would have required a continuance in order to prepare adequately.  The State

[33] Thompson, 169 Wn. App. at 457-58 (quoting Schaller, 143 Wn. App. at 271).

[34] Moore, 159 F.3d at 1161 (quoting United States v. D'Amore, 56 F.3d 1202, 1206 (9th Cir. 1995)).

-17-

noted that the trial had already been continued twice, medical personnel called as witnesses had adjusted their schedules to testify, and R.O.'s continued availability was uncertain. This factor weighs against finding an abuse of discretion. We hold that the trial court properly exercised its discretion in denying Townsel's motion for substitution of counsel.

Double Jeopardy

Townsel argues that his convictions for both assault in the first degree and kidnapping in the first degree violate the prohibition against double jeopardy. Townsel contends, "The evidence of first degree assault necessarily proved the first degree kidnapping on the facts of this case. The restraint and the assault occurred at the same time. [R.O.] was restrained by means of the assault."

The state and federal constitutions protect against multiple punishments for the same offense. The Fifth Amendment to the United States Constitution provides that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, article I, section 9 of the Washington Constitution ensures that "[n]o person shall be . . . twice put in jeopardy for the same offense." Although the State may bring multiple charges arising from the same criminal conduct, "'[w]here a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same

-18-

offense.'"[35] A double jeopardy claim presents a question of law we review de novo.[36]

Our Supreme Court has adopted a four-part test to determine if the legislature intended multiple punishments in a particular situation.[37] First, a court considers any express or implicit legislative intent based upon the criminal statutes involved.[38] If this intent is unclear, a court uses the "same evidence" test set forth in <u>Blockburger v. United States</u>[39] to assess if the two offenses are the same in both fact and law.[40] "Offenses are the same in fact when they arise from the same act or transaction. They are the same in law when proof of one offense would also prove the other."[41] Where the degree of one offense is elevated by conduct constituting a separate offense, a third test, the merger doctrine, may help determine legislative intent.[42] Under the merger doctrine, courts presume the legislature intended to punish both offenses through a greater sentence for

---

[35] <u>State v. Kier</u>, 164 Wn.2d 798, 803-04, 194 P.3d 212 (2008) (internal quotation marks omitted) (quoting <u>State v. Freeman</u>, 153 Wn.2d 765, 771, 108 P.3d 753 (2005)).

[36] <u>State v. Mutch</u>, 171 Wn.2d 646, 661-62, 254 P.3d 803 (2011).

[37] <u>See Freeman</u>, 153 Wn.2d at 771-73.

[38] <u>Freeman</u>, 153 Wn.2d at 771-72.

[39] 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[40] <u>Freeman</u>, 153 Wn.2d at 772.

[41] <u>State v. Martin</u>, 149 Wn. App. 689, 699, 205 P.3d 931 (2009) (citing <u>State v. Calle</u>, 125 Wn.2d 769, 777-78, 888 P.2d 155 (1995)).

[42] <u>Kier</u>, 164 Wn.2d at 804.

the greater crime.[43]   Finally, even if two convictions appear to merge on an abstract level under this test, they may be punished separately if an independent purpose or effect for each exists.[44]

We consider first any express or implicit legislative intent of separate punishments for related crimes.[45]   Here, neither the kidnapping in the first degree statute nor the assault in the first degree statute explicitly addresses legislative intent about separate punishments.[46]   Nor do the parties present other evidence of legislative intent.[47]   We next consider the "same evidence" test.   If each crime contains an element that the other does not, we presume that the crimes are not the same offense for double jeopardy purposes.[48]   We do not simply compare the statutory elements at an abstract level but consider the elements of the offenses as charged and proved.[49]   If each offense requires proof of a fact that the other

---

[43] Freeman, 153 Wn.2d at 772-73.

[44] Kier, 164 Wn.2d at 804.

[45] An example of such express authorization is RCW 9A.52.050, where the legislature explicitly provided for cumulative punishments for crimes committed during a burglary.

[46] Compare RCW 9A.40.020(1)(c), (d) (kidnapping in the first degree), with RCW 9A.36.011(1)(a) (assault in the first degree).

[47] See, e.g., Calle, 125 Wn.2d at 777-78 (finding legislative intent to punish separately rape and incest arising from same act).

[48] Calle, 125 Wn.2d at 777.

[49] State v. Nysta, 168 Wn. App. 30, 47, 275 P.3d 1162 (2012), review denied, 177 Wn.2d 1008 (2013).

does not, separate punishments do not offend the prohibition against double jeopardy.[50]

To convict Townsel of kidnapping in the first degree, the State had to prove that he intentionally abducted R.O. with intent to inflict bodily injury or extreme mental distress on her.[51] To convict Townsel of assault in the first degree, the State had to prove that he, with intent to inflict great bodily harm, assaulted R.O. "with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death."[52] Kidnapping in the first degree requires intent to inflict bodily injury or extreme emotional distress but, unlike assault in the first degree, does not require proof of an actual battery. Assault in the first degree requires intent to inflict great bodily harm but does not require an abduction. Contrary to Townsel's assertion that R.O. was "restrained by means of the assault," the State elicited testimony and presented evidence to prove that the kidnapping preceded and was separate from the assault. Both an abstract comparison of the statutory elements and consideration of the offenses as charged and proved reveal that each offense required the jury to find an element, and facts supporting that element, that the other offense did not.

---

[50] Nysta, 168 Wn. App. at 45; State v. Fuentes, 150 Wn. App. 444, 451, 208 P.3d 1196 (2009) (citing Calle, 125 Wn.2d at 777).
[51] RCW 9A.40.020(1)(c), (d).
[52] RCW 9A.36.011(1)(a).

Though the "same evidence" test "creates a rebuttable presumption that the offenses are not the same," the merger doctrine can rebut this presumption.[53] The merger doctrine is a rule of statutory construction which only applies where the legislature has clearly indicated that to prove a particular degree of crime, the State must prove that the defendant committed not only that crime but also an act defined as a crime elsewhere in the criminal statutes.[54] Here, the jury did not need to find that Townsel committed either offense to elevate the other offense to the first degree. Accordingly, the offenses do not merge.

Townsel argues, "'Intent to inflict great bodily harm' in the first degree assault offense will always satisfy the 'intent to inflict bodily injury' prong of the first degree kidnapping offense. Both require intent to inflict harm, with 'bodily injury' subsumed within 'great bodily harm.'" Therefore, Townsel contends, "The evidence required to support a conviction for first degree kidnapping would have been sufficient to warrant a conviction for first degree assault or vice-versa."

We disagree. Although both offenses require the intent to inflict bodily harm, only assault in the first degree requires proof of an actual battery. And only the kidnapping charge requires proof of an abduction. Thus the evidence adequate to support Townsel's kidnapping conviction would not have also

---

[53] In re Pers. Restraint of Francis, 170 Wn.2d 517, 524 n.4, 242 P.3d 866 (2010).

[54] State v. Vladovic, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983).

supported his assault conviction or vice versa. It is insufficient to show merely that the two offenses share the element of intent to inflict harm. Townsel asks us to apply the "same conduct" test that the United States Supreme Court articulated in Grady v. Corbin[55] but overruled in United States v. Dixon.[56] In Grady, the Court held that the double jeopardy clause bars prosecution of any offense "in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted."[57] Three years later in Dixon, the Court reaffirmed the Blockburger "same elements" test, rejecting Grady as a "mistake" that contradicted precedent and created confusion.[58] In State v. Gocken,[59] our State Supreme Court likewise rejected the "same conduct" test in favor of the "same elements" test. Under Blockburger and Gocken, Townsel's convictions for kidnapping in the first degree and assault in the first degree do not offend the prohibition against double jeopardy.[60]

---

[55] 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990).
[56] 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).
[57] Grady, 495 U.S. at 521.
[58] Dixon, 509 U.S. at 710-11.
[59] 127 Wn.2d 95, 107, 896 P.2d 1267 (1995).
[60] Because neither the "same evidence" test nor a merger analysis indicates that the two convictions constitute double jeopardy, we need not address whether there was "an independent purpose . . . to each." Freeman, 153 Wn.2d at 773.

## CONCLUSION

The prosecutor's conduct was improper in several instances, but Townsel does not show prejudice. The trial court did not abuse its discretion by denying Townsel's motion to substitute counsel, and Townsel's convictions do not violate the prohibition against double jeopardy. We affirm.

_____ Leach, J.

WE CONCUR:

_____ Spearman, C.J.

_____ Dwyer, J.