IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33252-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| STEPHEN WAYNE MILLER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Stephen Miller appeals his convictions for third degree rape of a child and third degree child molestation. Prior to the issuance of this opinion, he moved to dismiss seven of his assignments of error. We grant his motion. His remaining contentions are: (1) the trial court violated his right to be free from double jeopardy by not instructing the jury it needed to base each guilty verdict on a separate and distinct act, (2) the trial court gave him a sentence that exceeded the statutory maximum, (3) several of his community custody conditions are either unconstitutionally vague or violate his rights to marry and parent, and (4) the trial court erred when it imposed legal financial obligations (LFOs) without first inquiring into his current and future ability to pay those obligations. We reject his first contention, accept the State's concessions as to

his remaining contentions, and remand for resentencing.

## FACTS

Around June 2011, 15-year-old S.L. became friends with M.B., who is Mr. Miller and Sherri Miller's daughter. The two girls frequently spent the night at each other's houses, but stayed at M.B.'s house more often. S.L. was living with her uncle. S.L.'s uncle would drop S.L. off at the Millers' house, and the Millers would bring her back home the next day. Occasionally, just Mr. Miller would bring her home.

That summer, Mr. Miller sent S.L. a text message asking for provocative pictures. One evening, S.L. was over at the Millers' house and was outside talking to Mr. Miller. Mr. Miller grabbed her and started to kiss her. He began to touch her breasts, both over and underneath her clothes. Mr. Miller then removed S.L.'s pants and had sex with her. S.L. continued going over to the Millers' house.

Mr. Miller continued to give S.L. rides home. On the rides, Mr. Miller would touch S.L.'s breasts and would use his fingers to penetrate her vagina. On two occasions, Mr. Miller had sex with S.L. in the Millers' house. One time was in the basement on couch cushions. The next time was against a bar. At some point after this, Mrs. Miller angrily confronted S.L. about what was happening between her and Mr. Miller. S.L. stopped going to the Millers' house after that.

2

In October 2011, Mr. Miller went to S.L.'s house. S.L. was home alone. Mr. Miller grabbed S.L. and began kissing and touching her. They went upstairs to S.L.'s bedroom, and Mr. Miller had sex with S.L. on her bed. Mr. Miller also performed oral sex on S.L.

S.L. later disclosed in therapy that she had been in a sexual relationship with Mr. Miller. This disclosure resulted in a mandatory report, and the police began an investigation.

The State charged Mr. Miller with two counts of third degree rape of a child and one count of third degree child molestation. The State alleged Mr. Miller had sexual intercourse and sexual contact with S.L. between February 22, 2011, and February 21, 2012.

Trial commenced in January 2015, and the jury heard the testimonies of various witnesses, including S.L., who testified to the incidents described above.

After both parties rested, the court instructed the jury. The court did not instruct the jury that it must base each guilty verdict on a separate and distinct act. Mr. Miller did not take exception to the court's failure to give such an instruction. The jury deliberated and found Mr. Miller guilty of one count of third degree child molestation and one count

of third degree rape of a child. The jury was unable to reach a verdict on the other count of third degree rape of a child.

The trial court sentenced Mr. Miller to 30 months' confinement on the third degree rape of a child count and 20 months' confinement on the third degree child molestation count. The court ran the sentences concurrently. The court also imposed 36 months' community custody. The judgment and sentence contained a *Brooks*[1] notation, which stated that the "[c]ombined term of confinement and community custody for any particular offense cannot exceed the statutory maximum." Clerk's Papers (CP) at 121.

The trial court imposed a number of community custody conditions. These conditions prohibited Mr. Miller from having contact with minor children, residing with minor children, or going "places where minor children are known to congregate unsupervised." CP at 127. However, the court ordered that Mr. Miller was permitted to have contact with his minor biological children and stepchildren. Another condition prohibited Mr. Miller from "possess[ing] or perus[ing] pornographic materials." CP at 127.

---

[1] *In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 211 P.3d 1023 (2009).

The trial court also imposed a total of $1,487.66 in LFOs. Of this sum, $687.66 were discretionary costs, which included a $437.66 witness fee and a $250.00 jury demand fee.[2] The trial court did not inquire into Mr. Miller's current or likely future ability to pay the LFOs.

Mr. Miller appeals.

## ANALYSIS

1. DOUBLE JEOPARDY

Mr. Miller argues his right to be free from double jeopardy was violated because the trial court failed to instruct the jury that it needed to base each guilty verdict on a separate and distinct act. Because the jury was not so instructed, he contends the jury could have convicted him of rape of a child and child molestation based on the same criminal act—when he performed oral sex on S.L.

Defendants may raise double jeopardy claims for the first time on appeal. *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). This court reviews whether a double jeopardy violation occurred de novo. *Id.* at 661-62.

---

[2] This assumes the jury demand fee is discretionary. We have recently observed that the discretionary or mandatory character of the jury demand fee is unclear. *See State v. Clark*, 195 Wn. App. 868, 872, 381 P.3d 198 (2016), *review granted*, 388 P.3d 487 (2017).

The right to be free from double jeopardy protects criminal defendants against multiple punishments for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. "[I]n sexual abuse cases where multiple identical counts are alleged to have occurred within the same charging period, the trial court must instruct the jury 'that they are to find "separate and distinct acts" for each count.'" *State v. Borsheim*, 140 Wn. App. 357, 367, 165 P.3d 417 (2007) (quoting *State v. Hayes*, 81 Wn. App. 425, 431, 914 P.2d 788 (1996)).

The jury found Mr. Miller guilty of one count of child rape and one count of child molestation. This ordinarily would not create a double jeopardy problem, but in this case S.L. testified that Mr. Miller performed oral sex on her. Under the definitions of "sexual intercourse" and "sexual contact" in chapter 9A.44 RCW, oral sex, "if done for sexual gratification, is both the offense of molestation and the offense of rape." *State v. Land*, 172 Wn. App. 593, 600, 295 P.3d 782 (2013). Because these offenses in this context are the same in fact and in law, they are not separately punishable. *Id.* Thus, because it is possible the jury found Mr. Miller guilty of both rape and molestation based on the oral sex act, this creates a potential double jeopardy violation.

The State concedes the trial court failed to instruct the jury that each guilty verdict must be based on a separate and distinct act. "However, flawed jury instructions that

6

permit a jury to convict a defendant of multiple counts based on a single act do not

necessarily mean that the defendant received multiple punishments for the same offense;

it simply means that the defendant *potentially* received multiple punishments for the same

offense." *Mutch*, 171 Wn.2d at 663. Despite the potential for a double jeopardy

violation, this court may nevertheless uphold a defendant's convictions if it determines

that the information, instructions, testimony, and argument clearly demonstrated that the

State was not seeking to impose multiple punishments for the same offense. *Id.* at 663-

65; *Land*, 172 Wn. App. at 603.

In *Land*, a jury convicted Clifford Land of third degree rape of a child and third

degree child molestation based on the victim's testimony that Mr. Land touched her

breasts, kissed her on her "lower half," and put his finger in her vagina. *Land*, 172 Wn.

App. at 597-98. Mr. Land appealed, arguing the convictions violated double jeopardy

because they might have been based on the same oral sex act. *Id.* at 598.

The *Land* court held that even though the trial court did not instruct the jury that it

must base each conviction on a separate and distinct act, the record clearly demonstrated

the State was not seeking to impose multiple punishments for the same offense. *Id.* at

603. The court first reasoned that the victim's testimony that Mr. Land kissed her on her

"lower half" was too vague to prove that Mr. Land performed oral sex on her. *Id.* at 602.

7

The court further reasoned that the prosecutor explained to the jury that the victim's testimony that Mr. Land touched her breasts proved molestation and the testimony Mr. Land penetrated her vagina proved rape. *Id.* Finally, the court reasoned that the trial court gave two separate to-convict instructions, which clearly delineated the two counts. *Id.*

Unlike the victim in *Land*, S.L. unequivocally testified that Mr. Miller performed oral sex on her. However, the prosecutor repeatedly distinguished between the acts the State alleged as a basis for the rape charge and the acts the State alleged as a basis for the molestation charge. In her opening statement, the prosecutor stated the State was charging Mr. Miller with third degree child molestation for touching S.L.'s breasts in his car. In closing, the prosecutor argued the acts underlying the State's rape charges were when Mr. Miller had sex with S.L., when he performed oral sex on her, and when he placed his finger in her vagina. The prosecutor then argued the acts underlying the State's child molestation charge were when Mr. Miller touched S.L.'s breasts in his vehicle.

Mr. Miller argues that *State v. Kier*, 164 Wn.2d 798, 813, 194 P.3d 212 (2008) held that a prosecutor's election as to what acts support each charge does not cure a double jeopardy violation. However, *Kier* only held that the prosecutor's closing

8

argument did not cure the double jeopardy problem in that particular case, as it was "not a situation in which a clear election was made." *Id.* at 813. The main reason for this was because the witnesses' testimonies made it unclear whether one person was the victim of both crimes. *Id.* at 811-13. Because of this ambiguity, it was unclear whether the charges merged, so the court held the rule of lenity applied. *Id.* at 813-14. Here, there was one victim, and her testimony, together with the State's argument, made clear that the breast touching was the basis for the molestation charge, and the sex, oral sex, and digital penetration were the bases for the rape charges.

We therefore conclude S.L.'s testimony, the prosecutor's arguments, and the jury instructions made it manifestly apparent the State was not seeking to impose multiple punishments for the same offense. Mr. Miller's right to be free from double jeopardy was not violated.

2. SENTENCE EXCEEDING THE STATUTORY MAXIMUM

Mr. Miller argues, and the State concedes, that the trial court gave him a sentence that exceeds the statutory maximum. Whether a sentence exceeds the statutory maximum is an issue of statutory interpretation this court reviews de novo. *State v. Bruch*, 182 Wn.2d 854, 859, 346 P.3d 724 (2015). Although Mr. Miller did not object to the terms of

9

his sentence below, unpreserved sentencing errors may be raised for the first time on

appeal. *See State v. Ford*, 137 Wn.2d 472, 477-78, 973 P.2d 452 (1999).

A defendant's sentence cannot exceed the statutory maximum term for the class of

crime for which the offender was convicted. RCW 9A.20.021(1). Third degree rape of a

child and third degree child molestation are both class C felonies. RCW 9A.44.079(2);

RCW 9A.44.089(2). The maximum sentence is thus 5 years, or 60 months. RCW

9A.20.021(1)(c).

When a person is convicted of a sex offense, the trial court must sentence that

person to 36 months' community custody in addition to the other terms of the sentence.

RCW 9.94A.701(1)(a). Terms of confinement and community custody are both included

in the calculation of the statutory maximum term, and the combination of the two cannot

exceed the statutory maximum. RCW 9.94A.505(5); *State v. Boyd*, 174 Wn.2d 470, 473,

275 P.3d 321 (2012).

Following RCW 9.94A.701(9)'s enactment in 2009, trial courts are no longer

permitted to use *Brooks* notations in order to ensure sentences do not exceed statutory

maximums. *Boyd*, 174 Wn.2d at 473. Instead, trial courts must reduce the term of

community custody "whenever an offender's standard range term of confinement in

combination with the term of community custody exceeds the statutory maximum for the

10

crime as provided in RCW 9A.20.021." RCW 9.94A.701(9). A trial court may, however, impose a variable period of community custody that recognizes the Department of Corrections' authority to transfer the earned early release of certain offenders into community custody under RCW 9.94A.729(5). *See Bruch*, 182 Wn.2d at 862-63.

Here, the trial court sentenced Mr. Miller to 30 months' incarceration, followed by 36 months' community custody. His total sentence is 66 months, which plainly exceeds the 60-month statutory maximum. Although the trial court included a *Brooks* notation in the judgment and sentence, the *Brooks* notation procedure no longer complies with statutory requirements. The trial court was required to comply with RCW 9.94A.701(9). When a trial court's sentence violates RCW 9.94A.701(9), this court remands to the trial court to either amend the community custody term or to resentence consistent with the statute. *Boyd*, 174 Wn.2d at 473.

We remand to the trial court for it to resentence Mr. Miller so that the combined terms of incarceration and community custody do not exceed 60 months. In doing so, the trial court may impose a variable term of community custody to account for any earned early release time.

11

3. COMMUNITY CUSTODY CONDITIONS

Mr. Miller challenges several of his community custody conditions. He argues the conditions are unconstitutionally vague, or they violate his rights to marriage and parent. Defendants may generally challenge community custody conditions for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 745, 193 P.3d 678 (2008).

This court reviews community custody conditions for abuse of discretion. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). The abuse of discretion standard applies whether this court is reviewing a crime-related community custody condition, or reviewing a community custody condition for vagueness. *See id.* at 652, 656; *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010) (vagueness); *State v. Cordero*, 170 Wn. App. 351, 373, 284 P.3d 773 (2012) (crime related). Imposing an unconstitutional condition is always an abuse of discretion. *Irwin*, 191 Wn. App. at 652.

a. *Condition 16: Prohibiting Mr. Miller from going places minor children are "known to congregate"*

Mr. Miller argues, and the State concedes, that condition 16 is unconstitutionally vague. Due process requires that laws not be vague. *Id.* A community custody condition is not vague as long as it (1) provides ordinary people with fair warning of the proscribed conduct, and (2) has standards that are definite enough to "'protect against arbitrary

12

enforcement.'" *Id.* at 653 (internal quotations marks omitted) (quoting *Bahl*, 164 Wn.2d at 752-53).

*Irwin*, 191 Wn. App. 644 controls here. In *Irwin*, Samuel Irwin pleaded guilty to second degree child molestation and the trial court imposed the following community custody condition: "'Do not frequent areas where minor children are known to congregate, as defined by the supervising [community corrections officer (CCO)].'" *Id.* at 649 (alteration in original).

The *Irwin* court held the condition was unconstitutional under both prongs of the vagueness analysis. *Id.* at 654-55. Under the first prong, the court reasoned that without some clarifying language or an illustrative list of prohibited locations, simply prohibiting Mr. Irwin from going where "'children are known to congregate'" did not give ordinary people "sufficient notice to 'understand what conduct is proscribed.'" *Id.* at 655 (internal quotation marks omitted) (quoting *Bahl*, 164 Wn.2d at 753). Under the second prong, the court reasoned that allowing the CCO to designate prohibited locations was constitutionally impermissible because it was susceptible to arbitrary enforcement. *Id.*

Here, condition 16 states:

Do not go to places where minor children are known to congregate unsupervised without prior approval from your therapist and your community corrections officer . . . .

13

CP at 127. Unlike in *Irwin*, condition 16 is not susceptible to arbitrary enforcement because it does not give boundless authority to Mr. Miller's CCO to designate prohibited locations. Rather, it only requires Mr. Miller to obtain permission in advance. However, it still fails to satisfy the first prong of the vagueness analysis. Without some clarifying language or an illustrative list of prohibited locations, the condition does not give ordinary people fair warning of the proscribed conduct. Accordingly, we strike the condition as being unconstitutionally vague and remand for the trial court to tailor it consistent with *Irwin*.

  b.  *Condition 19: Prohibiting Mr. Miller from possessing pornographic materials*

Mr. Miller argues, and the State concedes, that the community custody condition prohibiting him from possessing or perusing pornographic materials is void for vagueness.

In *Bahl*, Eric Bahl was convicted of second degree rape and the trial court imposed the following community custody condition: "'Do not possess or access pornographic materials, as directed by the supervising Community Corrections Officer.'" *Bahl*, 164 Wn.2d at 743. The *Bahl* court held this condition was unconstitutional under both prongs of the vagueness analysis. *Id.* at 758.

14

Like in *Bahl*, condition 19 does not give fair warning of the proscribed conduct. Accordingly, we strike the condition as being unconstitutionally vague and remand for the trial court to tailor it by, for example, revising it to prohibit Mr. Miller from possessing or perusing any depiction of "sexually explicit conduct" as defined in RCW 9.68A.011(4). *See Bahl*, 164 Wn.2d at 760 ("sexually explicit," in the context used, was not unconstitutionally vague).

     c.    *Conditions 14, 15, 17, and 18*

Mr. Miller challenges the conditions prohibiting him from having contact with minors, residing where minors are residing, holding positions of authority over minors, and entering into relationships with women who have minor children. He contends these conditions interfere with his fundamental rights to marry and parent because he has several biological children and is married to a woman with minor children.

As part of any term of community custody, the court may impose and enforce crime-related prohibitions. RCW 9.94A.505(9); RCW 9.94A.703(3)(f). A crime-related community custody condition prohibits conduct that "directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "Directly related" includes conditions that are reasonably related to the crime. *Irwin*, 191 Wn. App. at 656.

However, "[m]ore careful review of sentencing conditions is required when those conditions interfere with a fundamental constitutional right." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). The right to the care, custody, and companionship of one's children constitutes such a fundamental constitutional right. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). Thus, sentencing conditions burdening this right "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *Id.* (quoting *Warren*, 165 Wn.2d at 32).

For example, in *Letourneau*, Mary Letourneau was convicted of raping a minor to whom she was not related. *State v. Letourneau*, 100 Wn. App. 424, 428-29, 997 P.2d 436 (2000). The trial court imposed a condition prohibiting her from unsupervised contact with her biological children. *Id.* at 437-38. Because there was no evidence that she might molest her own children, the court found that the condition was not reasonably necessary to accomplish the State's interest. *Id.* at 441-42.

Here, Mr. Miller was convicted of third degree rape of a child and third degree child molestation, crimes that inherently involve children as victims. Conditions 14, 15, 17, and 18 seek to limit Mr. Miller's access to children and are therefore crime related. In order to avoid interfering with Mr. Miller's fundamental right to the care and custody of

16

his children, the court ordered that Mr. Miller was permitted to have contact with his

minor biological children and stepchildren. This cured any potential problem with

conditions 14 and 15, which prohibit Mr. Miller from having contact with minor children

and residing where minor children are also residing.

However, it is unclear what effect the trial court's order allowing Mr. Miller to

have contact with his children and stepchildren has on conditions 17 and 18, which

prohibit Mr. Miller from holding positions of authority over minor children and entering

into relationships with women who have minor children. Accordingly, we remand for the

trial court to clarify the parameters of these two conditions. *See Rainey*, 168 Wn.2d at

382.

    4.    UNPRESERVED LFO ERROR

Mr. Miller contends the trial court erred by ordering him to pay discretionary LFOs

without first making an adequate inquiry into his ability to pay. *See State v. Blazina*, 182

Wn.2d 827, 830, 344 P.3d 680 (2015). The State concedes error. Although Mr. Miller

did not preserve this error with a proper objection below, because resentencing is

required, we accept the State's concession. Accordingly, we remand for the trial court to

make an individualized inquiry into Mr. Miller's ability to pay discretionary LFOs. *See*

*State v. Hart*, 195 Wn. App. 449, 462-63, 381 P.3d 142 (2016) (remanding for an

individualized inquiry when the State concedes error), *review denied*, 388 P.3d 480 (2017).

5.    APPELLATE COSTS

Mr. Miller asks this court to decline to impose appellate costs in the event the State prevails on appeal. "A 'prevailing party' is any party that receives some judgment in its favor." *Guillen v. Contreras*, 169 Wn.2d 769, 775, 238 P.3d 1168 (2010). "If neither party completely prevails, the court must decide which, if either, substantially prevailed." *Id.* Generally, the party that substantially prevails on review will be awarded appellate costs, unless the court directs otherwise in its decision terminating review. RAP 14.2. An appellate court's authority to award costs is "permissive," and a court may, pursuant to RAP 14.2, decline to award costs at all. *See State v. Nolan*, 141 Wn.2d 620, 628, 8 P.3d 300 (2000).

Here, the State prevailed on the first issue, and Mr. Miller prevailed on the second, third, and fourth issues. Under such circumstances, we do not deem the State the substantially prevailing party, and deny it an award of costs on appeal.

No. 33252-7-III
*State v. Miller*

Affirm in part, reverse in part, and remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

19