IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 87204-4-I |
| Respondent, | |
| v. | DIVISION ONE |
| DANIEL JOSEPH JONES, | UNPUBLISHED OPINION |
| Appellant. | |

HAZELRIGG, A.C.J. — Daniel Joseph Jones appeals from his conviction after jury trial for two counts of possession of a stolen motor vehicle, one count of assault in the second degree, and one count of robbery in the first degree. He argues that the failure to provide a supplemental jury instruction on self-defense in response to a question from the jury was erroneous and the court's response was an improper judicial comment on the evidence. Jones also raises two separate claims of double jeopardy as to his crimes of conviction. We reverse in part as to both double jeopardy claims and legal financial obligations, but otherwise affirm.

FACTS

Steven Henry had borrowed his sister's red Toyota Yaris, parked it in front of his house, and left it unlocked with the keys and his wallet in a bag inside the vehicle. The next morning, the car was gone. Henry reported the theft to his sister and the police. Henry began receiving notifications about charges on his credit card at

nearby stores, and later that day, he and his girlfriend,[1] Tasha Nugent, searched for the Toyota.

At approximately 6 p.m., Henry noticed a recent charge on his credit card at a nearby grocery store. Nugent drove Henry to the store and they found the missing vehicle in the parking lot. Henry told Nugent to park her minivan in front of the car. Henry exited the minivan and noticed a white male, later identified as Daniel Jones, inside the vehicle. Henry tapped on the driver's window. When he received no response, Henry punched through the window and, in doing so, physically "contacted" Jones. Jones then slid to the passenger side and exited through the other side of the car. Henry began moving around to the other side of the car and, upon arriving at the rear bumper of the passenger side, saw Jones pull a gun out of his waistband and point it at him. Henry told Jones to put the weapon down and "fight [him] like a man." Jones backed away and put the gun back in his waistband. Nugent, who had gotten out of the minivan, took a photograph of Jones. Jones pushed Nugent out of the way, jumped into her minivan, and drove away. Henry pursued in the Toyota until he was stopped by police. Neither Jones nor Nugent's minivan were located immediately.

The State initially charged Jones with one count of robbery in the first degree with Henry as the named victim, two counts of assault in the second degree with deadly weapon enhancements as to Henry and Nugent, and one count of possession of a stolen motor vehicle as to the Yaris. Shortly before trial, the State filed an amended information that set out the following charges: robbery in the first

---

[1] Nugent was alternately referred to as Henry's girlfriend and wife during trial; she identified herself as his fiancée during her testimony.

degree with Nugent as the named victim (count I), assault in the second degree with a deadly weapon enhancement as to the confrontation with Henry (count II), possession of a stolen motor vehicle as to the Toyota (count III), and a second count of possession of a stolen motor vehicle based on Nugent's minivan (count IV).

Jones' defense was premised on duress as laid out in his closing argument:

> So what can you envision were the choices that Mr. Jones had at that time? He could stand there and get physically beaten to the satisfaction of a man who described himself as being angry, agitated and a man who was obviously willing to already punch Mr. Jones through a tempered glass window or flee.
> How do you flee? Well, he could run. Is he going to outrun a guy that's 6'4", 6'5" and in shape to be playing professional ball? Ain't gonna happen. So he sees the opportunity. He sees the opportunity to flee in a vehicle that can outrun Mr. Henry, at least on foot.
> What can you envision would have been the likely outcome if Mr. Jones had accepted Mr. Henry's taunt to stand there and fight like a man?

Jones also argued that the State failed to produce evidence corroborating Henry and Nugent's testimony as to the existence of a gun.

The trial court instructed the jury on the defense of duress based on the defense theory of the case and evidence adduced during testimony. During deliberation, the jury asked the court a question concerning jury instruction 13, which defined assault, in part, as an act involving unlawful force. The jury inquired, "[w]ith regard to instruction 13, should the subject of self defense be considered when determining whether it was unlawful?"

The judge and the parties discussed possible responses to the jury's question. Jones requested that the court provide the jury with a supplemental instruction on self-defense, while the State opposed the supplemental instruction, noting that Jones had not argued self-defense. The trial court agreed with the State,

- 3 -

explaining "[s]elf-defense wasn't raised at all, so I don't think we're going to give them an extra instruction on something that was not even touched on at all. There was absolutely no evidence to rule on self-defense whether there should be an instruction or not." The trial court then suggested a response to the jury of "either no or self-defense was not raised in this case." Jones opposed both approaches, preferring that the trial court instruct the jury to reread the instructions as a whole. The trial court suggested a response of "no, please reread your jury instructions." Jones objected and explained that

> if the jury, themselves, see self-defense even if it was not raised in the arguments of counsel, I think that that is an issue that we can either address the definition of self-defense or simply leave it alone, but telling them to disregard self-defense if they've seen it and counsel did not, I think it would be an error.

After further discussion, the trial court determined that it would instruct the jury, "No. Please re-read the instructions," as "it answers that they are to be considering only the instructions that they have in front of them." According to the court, "they're adding in other things that they shouldn't be considering. They should only consider the evidence that they heard and the instructions of the [c]ourt."

The jury subsequently convicted Jones as charged. The State conceded in its sentencing memorandum that for sentencing purposes count IV, possession of a stolen motor vehicle pertaining to the minivan, merged with count I, robbery in the first degree for the taking of that same vehicle. Jones' judgment and sentence (J&S) states that the two counts "encompass the same criminal conduct and count as one crime in determining the offender score." The court imposed a standard range

- 4 -

sentence of 160 months of incarceration, followed by 18 months of community custody, and the then-mandatory $500 victim penalty assessment (VPA).

Jones timely appealed.

ANALYSIS

Jones argues that the trial court committed reversible error by failing to give a supplemental jury instruction on self-defense and its response to the jury's inquiry was an improper judicial comment on the evidence. He also asserts two separate claims of double jeopardy with regard to the crimes of conviction and seeks relief from the VPA based on indigency.

I.      Supplemental Self-Defense Jury Instruction

Jones contends that the trial court erred by failing to provide a supplemental instruction on the law of self-defense in response to the jury's question. A trial court must ensure that the jury understands the law. *State v. Sutton*, 18 Wn. App. 2d 38, 45, 489 P.3d 268 (2021). "When it is apparent the jury does not understand the law, the trial court may and should issue a supplemental written instruction." *Id.* at 43. To that end, CrR 6.15(f)(1) allows a "trial court to provide the jury with supplemental written instructions on any point of law after deliberations begin." *Id.* at 42. "However, 'such supplemental instructions should not go beyond matters that either had been, or could have been, argued to the jury.'" *State v. Jasper*, 158 Wn. App. 518, 542, 245 P.3d 228 (2010) (quoting *State v. Ransom*, 56 Wn. App. 712, 714, 785 P.2d 469 (1990)). A defendant is not entitled to an instruction "for which there is no evidentiary support." *State v. Ager*, 128 Wn.2d 85, 93, 904 P.2d 715 (1995).

Whether to give further instructions to a deliberating jury is within the trial court's discretion. *State v. Sublett*, 176 Wn.2d 58, 82, 292 P.3d 715 (2012) (plurality opinion). Therefore, we review a trial court's decision on whether to give a supplemental jury instruction for abuse of discretion. *Sutton,* 18 Wn. App. 2d at 42-43. "Discretion is abused if it is exercised on untenable grounds or for untenable reasons." *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

The issue of a supplemental instruction arose in response to the jury question concerning the instruction defining assault for count II. To convict Jones of assault in the second degree as alleged in count II, the jury was instructed that it must find beyond a reasonable doubt that Jones assaulted Harvey with a deadly weapon. *See* RCW 9A.36.021(1)(c). The court had instructed the jury on duress as follows:

> Duress is a defense to a charge of robbery, assault and possession of stolen motor vehicle (white minivan) if:
> (1) The defendant participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the defendant that in case of refusal the defendant would be liable to immediate death or immediate grievous bodily injury;
> (2) Such apprehension was reasonable upon the part of the defendant; and
> (3) The defendant would not have participated in the crime except for the duress involved.
> Threat means to communicate, directly or indirectly, the intent to cause death or grievous bodily injury.
> The defense of duress is not available if the defendant intentionally or recklessly placed himself in a situation in which it was probable that he would be subject to duress.
> The defendant has the burden of proving this defense by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty as to these charges.

The jury instructions defined assault as "an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury." Again, the jury's question was whether it should consider self-defense when determining whether Jones used unlawful force.

Self-defense is an affirmative defense to assault in the second degree. *See State v. Acosta*, 101 Wn.2d 612, 616-18, 683 P.2d 1069 (1984); *State v. Tullar*, 9 Wn. App. 2d 151, 156, 442 P.3d 620 (2019). Because the use of force is lawful "when used by a person about to be injured, provided that the force used is not more than necessary," self-defense negates the mental state and the "unlawful force" elements of assault in the second degree. *Tullar*, 9 Wn. App. 2d at 156; *see also* RCW 9A.16.020(3). In order to raise self-defense before a jury, the defendant bears the initial burden of producing some evidence that their actions occurred in circumstances amounting to self-defense. *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). Generally, a criminal defendant who produces such evidence is entitled to a jury instruction on self-defense. *State v. Werner*, 170 Wn.2d 333, 336-37, 241 P.3d 410 (2010). Once properly raised by the defendant, the State bears the burden to disprove self-defense beyond a reasonable doubt. *Acosta*, 101 Wn.2d at 618-19.

Here, Jones initially sought and secured a jury instruction on the defense of duress.[2] Prior to the jury's inquiry, Jones did not request a self-defense instruction

---

[2] Duress is an affirmative defense that excuses a defendant's otherwise unlawful conduct. *State v. Frost*, 160 Wn.2d 765, 773-74, 161 P.3d 361 (2007). "The duress defense, unlike self-

or argue a theory of self-defense to the jury. Despite this, Jones now argues on appeal that "more than 'some evidence' tended to prove that [he] acted in self-defense when he displayed a gun and took the minivan" and, therefore, he was entitled to a self-defense instruction. Jones cites to the evidence demonstrating that Nugent parked her minivan to block the Toyota such that Jones could not drive away, and Henry was a large, physically fit man who punched out the window, "contacted" Jones, and taunted him to fight once Jones was outside the vehicle.

However, Jones never argued that he displayed a gun as an act of self-defense. Rather, he disputed that the State had produced evidence of a gun sufficient to carry its burden of proof beyond a reasonable doubt, asserting,

> The second claim of an offense as we chronologically go through what happened there is the claim of an assault on Mr. Henry. Although Ms. Nugent reported numerous bystanders and onlookers, the State did not produce a single corroborating eye witness to the existence of a gun. The only people who said that they actually saw a gun were Mr. Henry and Ms. Nugent.

Jones then continued on to highlight the inconsistencies, weaknesses, and problems with the testimony that Henry and Nugent provided as to his production of a gun from his waistband. Thus, Jones challenged the existence of the deadly weapon that served as the means of assault. He attempted to negate the element

---

defense or alibi, does not negate an element of an offense, but pardons the conduct even though it violates the literal language of the law." *State v. Riker*, 123 Wn.2d 351, 368, 869 P.2d 43 (1994). A claim of duress "admits the unlawful act or conduct, but not the crime itself." *Frost*, 160 Wn.2d at 776.

Duress requires that the "actor participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the actor that in case of refusal [they] or another would be liable to immediate death or immediate grievous bodily injury." RCW 9A.16.060(1)(a). The apprehension must be "reasonable upon the part of the actor," and "the actor would not have participated in the crime except for the duress involved." RCW 9A.16.060(1)(b), (c). The defendant bears the burden of proving duress by a preponderance of the evidence. *Frost*, 160 Wn.2d at 773.

of use of unlawful force by denying that any force happened, rather than arguing that the force was lawful. Jones' strategy of questioning the existence of the deadly weapon that was the basis for the assault charge was incompatible with the use of that weapon for self-defense.

Jones chose to argue the evidence in a manner that does not support a claim of self-defense. Moreover, providing a self-defense instruction would have resulted in the State acquiring the burden to disprove the defense, which may have required the prosecutor to approach its case-in-chief with a different strategy. In briefing on this assignment of error, Jones fails to address the implications of the unique procedural posture, the State's evidentiary burden as to self-defense, and the fact that both parties had rested. Additionally, while he now argues the court could or should have reopened the case for further testimony in response to the jury question, Jones made no such request at the time that the court took up the issue of its response here. As such, Jones has failed to demonstrate that the trial court abused its discretion by declining to issue a supplemental self-defense instruction to the jury.

II.     Judicial Comment on the Evidence

Jones further argues that the trial court's response to the jury question was an impermissible comment on the evidence because it resolved a key factual issue of whether he used unlawful force. In briefing, he asserts that, "[b]y telling the jury '[N]o,' it could not consider self-defense in determining whether the force used was unlawful, the court conveyed that Mr. Jones acted with unlawful force as a settled matter of law."

Article IV, section 16 of the Washington Constitution prohibits a judge from "'conveying to the jury [their] personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). "[A]ny remark that has the potential effect of suggesting that the jury need not consider an element of an offense could qualify as judicial comment." *Id.* The constitutional prohibition on such comments "forbids only those words or actions which have the effect of conveying to the jury a personal opinion of the trial judge regarding the credibility, weight or sufficiency of some evidence introduced at the trial." *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970).

Here, in answer to the jury's question as to whether it should consider self-defense in the context of unlawful force for the assault charge, the court answered "No. Please re-read the instructions." Rather than an opinion, the trial court's response was a correct statement of the law of the case. Jones had not put forth a claim of self-defense, therefore, the jury should not consider a defense during its deliberations that was not argued or supported with evidence. Perhaps more critically, in the absence of a self-defense instruction, the jury *could not* have deliberated on that particular legal theory as it had not received the *law* of self-defense from the court. As the judge stated in conveying the initial instructions, the jury had a duty "to accept the law from my instructions, regardless of what you personally believe the law is or what you personally think it should be. You must apply the law from my instructions." The trial court's response foreclosed the jury's

- 10 -

consideration of law outside the provided instructions and was not error. Finally, the jury instructions informed the jury that any statement that could be possibly construed as a comment on the evidence by the judge was unintentional and should be disregarded. We presume that juries follow the instructions of the court. *State v. Lamar*, 180 Wn.2d 576, 586, 327 P.3d 46 (2014). Because this was not an improper comment on the evidence, Jones has failed to establish entitlement to relief on this assignment of error.

III.    Double Jeopardy

Jones next raises two claims of double jeopardy. He contends that his convictions for assault in the second degree in count II and robbery in the first degree in count I violate the prohibition on double jeopardy and should merge. He also argues, and the State concedes, that his conviction for possession of the stolen minivan in count IV also merges with count I. We agree with Jones as to both of these claims.

"Double jeopardy is a constitutional limitation on the power of the court to place a person in jeopardy multiple times for the same offense." *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 813, 383 P.3d 454 (2016). The State may impose separate punishments for different offenses, but both the federal and state constitutions prevent multiple convictions and punishments for the same offense. *State v. Arndt*, 194 Wn.2d 784, 817, 453 P.3d 696 (2019); U.S. CONST. amend. V; WASH. CONST. art. I, § 9. "Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine

whether, in light of legislative intent, the charged crimes constitute the same offense." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004).

"Because the legislature has the power to define criminal conduct and assign punishment, the first step in determining whether a defendant has suffered multiple punishments for the same offense is to determine what punishments the legislature has authorized." *Arndt*, 194 Wn.2d at 815. Double jeopardy is not offended when the legislature has authorized cumulative punishments for both crimes. *Id.* We engage in the following four-step analysis to determine whether the legislature intended to authorize cumulative punishment: "(1) consideration of any express or implicit legislative intent, (2) application of the *Blockburger*,[3] or 'same evidence,' test, (3) application of the 'merger doctrine,' and (4) consideration of any independent purpose or effect that would allow punishment as a separate offense." *Id.* at 816 (quoting *State v. Freeman,* 153 Wn.2d 765, 771, 108 P.3d 7583 (2005)). When considering whether convictions violate double jeopardy, we look to how the offenses were both charged and proved. *Freeman*, 153 Wn.2d at 777; *State v. Whittaker*, 192 Wn. App. 395, 411, 367 P.3d 1092 (2016). A claim of double jeopardy is an issue of law that we review de novo. *Arndt,* 194 Wn.2d at 815.

A.      Assault in the Second Degree and Robbery in the First Degree

Where, as here, the alleged double jeopardy violation involves convictions for robbery in the first degree and assault in the second degree, "a case by case approach is required to determine whether [the crimes] are the same for double jeopardy purposes." *Freeman*, 153 Wn.2d at 780. However, "[g]enerally, it appears

---

[3] *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

that these two crimes will merge unless they have an independent purpose or effect."
*Id.*

The merger doctrine is a rule of statutory construction that is applicable "where the degree of one offense is elevated by conduct that constitutes a separate offense." *Id.* at 777-78; *State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008). Applicable here, "[t]he merger doctrine is triggered when second degree assault with a deadly weapon elevates robbery to the first degree because being armed with or displaying a firearm or deadly weapon to take property through force or fear is essential to the elevation." *Kier*, 164 Wn.2d at 806.

In this case, the State charged Jones with assault in the second degree, with Henry as the named victim, based on an allegation that the crime was committed with a deadly weapon (a gun). As noted herein, to convict on that crime, the jury was instructed that the State was required to prove beyond a reasonable doubt that with a deadly weapon Jones acted "with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another reasonable apprehension and imminent fear of bodily injury." The State also charged Jones with the robbery of Nugent which was elevated to first degree by his use of the firearm. *See* RCW 9A.56.190, .200(1)(a). The trial court provided a to-convict instruction that included that the theft of property "was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person or to the person or property of another," "[t]hat force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking," and the defendant was armed with

a deadly weapon or displayed what appeared to be a firearm or deadly weapon. The two crimes, as charged and instructed, required proof of a deadly weapon and apprehension or fear of harm.

While the State alleged separate victims for each count, both crimes relied on Jones producing and pointing his gun at Henry. As to the assault, the State argued in closing, "I would submit to you that the State has proved assault in the second degree beyond a reasonable doubt when Mr. Jones chose to point his firearm at Steven Henry." In arguing the robbery charge to the jury, the State again focused on Jones pointing a gun at Henry as follows:

> Element number three, that the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or *fear of injury to that person or to the person* or property *of another*.
> Again, once Mr. Jones decided to brandish that firearm, Ms. Nugent, as well as Steven Henry, became afraid. She wasn't going to do anything when the defendant ran at her. He had a gun on him. She was well aware of that, and I asked her were you afraid when he was running at you? Were you going to do anything to stop him? She said no. So yes, that fear, that threat of fear was present, and that's how he got into that car and drove off.
> . . . .
> Element number four, that the force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance of the taking. Element three and four kind of are intertwined, but, again, I asked Ms. Nugent based on the fact that you knew Mr. Jones was armed with a firearm and that he had pointed it at your husband, were you going to do anything to stop him? No. Were you afraid? Yes, I was.
> Element number four has been proven beyond a reasonable doubt, and I've been saying this the entire time in terms of the firearm.

(Emphasis added.) The facts and argument put forth by the State clearly relied on the single act of Jones pointing a gun at Henry to satisfy both the fear and deadly weapon elements of assault in the second degree and the fear and deadly weapon

elements of robbery in the first degree. That act was both the conduct amounting to assault and the basis for elevating the robbery to first degree. "[T]he degree of one offense is elevated by conduct constituting a separate offense," thus triggering the merger doctrine. *Kier*, 164 Wn.2d at 804. As our Supreme Court has identified "no evidence that the legislature intended to punish second degree assault separately from first degree robbery when the assault facilitates the robbery," these two convictions must merge. *Freeman*, 153 Wn.2d at 776.

When an individual is charged with two crimes, a double jeopardy violation is avoided when the lesser included offense merges into the more serious offense. *State v. Muhammad*, 194 Wn.2d 577, 618, 451 P.3d 1060 (2019) (plurality opinion). Because robbery in the first degree is a class A felony and assault in the second degree is a class B felony, the assault conviction on count II merges into the robbery conviction for count I. RCW 9A.56.200(2); RCW 9A.36.021(2)(a); *see also Kier*, 164 Wn.2d at 814. We reverse the conviction for assault in the second degree and remand to the trial court for resentencing.

### B.      Possession of Stolen Minivan and Robbery

Jones contends that his convictions for robbery in the first degree on count I and possession of a stolen vehicle pertaining to the minivan on count IV also violate double jeopardy and should merge. In the trial court, the State conceded that these two convictions merged. While the court confirmed and appeared to accept this concession, the J&S does not reflect merger of the two convictions. The J&S includes the conviction for possession of stolen vehicle and notes that the two counts "encompass the same criminal conduct" and are treated as one crime for the sole

purpose of determining the offender score. On appeal, the State acknowledges the error and concedes that remand is necessary for the trial court to vacate both the finding of same criminal conduct and the conviction for count IV. We agree. Because the two convictions violate double jeopardy, the less serious conviction must be removed from the J&S. *See State v. Turner*, 169 Wn.2d 448, 464, 238 P.3d 461 (2010).

IV.     Victim Penalty Assessment

Finally, Jones requests remand for the trial court to strike the VPA from his J&S. The State agrees that recent amendments to the VPA statute that prohibit imposition of the assessment on indigent defendants apply to Jones. The new J&S entered after resentencing should reflect this change in the law.

Affirmed in part, reversed in part, and remanded for resentencing consistent with this opinion.

_Hazelrigg, ACJ_

WE CONCUR:

_Díaz, J._                                    _Chung, J._